## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| STEVEN AND JOANNA CONE on Behalf of Themselves and Those Similarly Situated | CIVIL ACTION FILE NO |
| v. | _____ |
| | JURY        TRIAL |
| DEMANDED VORTENS, INC., and SANITARIOS LAMOSA S.A. DE C.V., | |
| Defendants. | |

## ORIGINAL COMPLAINT AND CLASS ACTION

Plaintiffs, STEVEN and JOANNA CONE, on behalf of Themselves and Those Similarly Situated, bring this Complaint for damages against Defendants, Vortens, Inc. and Sanitarios Lamosa S.A. DE C.V. showing this Court as follows:

### PARTIES

1.      Plaintiffs and proposed Class Representatives, Steven and Joanna Cone are citizens of the State of Texas and reside in the home located at 12237 Bethel Drive, Frisco, Collin County, Texas 75033.

2.      Defendant, Vortens, Inc. ("Vortens"), is a foreign, for-profit corporation with its principal place of business located at Félix U. Gómez 4047 Nte. Monterrey, N.L., México 64510, and an office address in the United States located at 1498 Brookport Drive,

Mansfield, OH 44906. Vortens' registered agent for service, CT Corporation System, 950 Bryan Street, Suite 2900, Dallas, Texas 75201 filed a Form 402 Resignation of Registered Agent on June 24, 2016. Notice of such resignation was provided to Trent Stephens at Strasburger & Price, 909 Fannin Street, Ste. 2300, Houston, Texas 77010.  As of the date of filing of this Original Complaint, no subsequent naming of a registered agent has been filed with the Texas Secretary of State.  Therefore, this Defendant may be served with process through the Texas Secretary of State.

3.      At all times relevant to this complaint, Defendant Vortens is and was engaged in the business of designing, manufacturing, distributing, and selling, among other things, "ceramic" toilet tanks for consumer use in residential homes, and was authorized to distribute and sell such toilet tanks in the State of Texas, including the toilet tanks that are the subject of this lawsuit.

4.      Defendant, Sanitarios Lamosa S.A. DE C.V. ("Sanitarios"), is a foreign for-profit corporation with its principal place of business located at Félix U. Gómez 4047 Nte. Monterrey, N.L., México 64510. Defendant, Sanitarios, may be served with process through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

5.      At all times relevant to this complaint, Defendant Sanitarios, is and was engaged in the business of designing, manufacturing, distributing, and selling, among other things, "ceramic" toilet tanks for consumer use in residential homes, and was authorized to distribute and sell such toilet tanks in the State of Texas, including the toilet tanks that are the subject of this lawsuit.

2

6.      The toilet tanks that are the subject of this lawsuit were designed, manufactured, distributed, marketed and/or sold by Defendant Vortens, and/or Defendant Sanitarios.

7.      Alternatively, upon information and belief, Defendant Sanitarios acquired by merger, consolidation, acquisition, and/or asset purchase all or a portion of Defendant Vortens' business of designing, manufacturing, distributing, and selling "ceramic" toilet tanks for consumer use in residential homes, and also expressly, impliedly, and/or by operation of law acquired and assumed any and all liabilities arising from the conduct of such business, including any and all liabilities arising from any defective condition and/or failure of one or more of the toilet tanks that are the subject of this lawsuit.

## JURISDICTION AND VENUE

8.      This is a Class Action lawsuit seeking monetary damages pursuant to Federal Rule of Civil Procedure 23.

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), because there is complete diversity of citizenship, in that the Plaintiffs and Defendants are citizens of different States and the amount in controversy exceeds, exclusive of interest and costs, the sum of $75,000. Jurisdiction is further conferred upon this Court pursuant to the Class Action Fairness Act in that damages exceed more than $5,000,000 in the aggregate, and the parties are citizens of different states. 28 U.S.C. § 1332(d)(2).

10.     This Court has personal jurisdiction over both defendants, because they have purposefully availed themselves of the privileges and benefits of conducting business

activities in Texas by placing their products, which are the subject of this suit, into the stream of commerce with the knowledge that they would be used in Texas and by being authorized to conduct business in the State of Texas. Furthermore, the Defendants' contacts with the forum are continuous and substantial and because the claims of Plaintiffs and the Class arise out of Defendants' contact with the forum.

11.     Venue is proper in this Court pursuant to 28 U.S.C. 1391(b)(2), because the event giving rise to this suit occurred in this judicial district.

## FACTS AND STATEMENT OF CLAIM

12.     At all relevant times herein, Steven and Joanna Cone were the owners of the residence located at 12237 Bethel Drive, Frisco, Collin County, Texas 75033 (the "Property").  Plaintiffs home contained multiple toilet tanks marked with the Vortens, Inc. logo believed to be distributed or otherwise manufactured by Vortens and/or Sanitarios Lamosa S.A. DE C.V.

13.     There are four model no. 3464 Vortens toilet tanks installed at the Property.



14.     The relevant Toilet Tanks installed at the Property were designed, manufactured, distributed, sold, and/or otherwise placed into the stream of commerce by the Named Defendants.  In the alternative, the Toilet Tanks were designed, manufactured, distributed, sold, and/or otherwise placed into the stream of commerce by Defendant Vortens, and contemporaneous with and/or subsequent thereto, Defendant Sanitarios, by way of merger, consolidation, acquisition, and/or an asset purchase agreement expressly, impliedly, and/or by operation of law acquired and assumed any and all of Vortens' liabilities arising out of the design, manufacture, distribution, and sale of all or a portion of Vortens' toilet tanks, including any and all liabilities arising from any defective condition and/or failure of the Toilet Tanks.

15.     Under any of these alternatives, both Defendants are legally liable for the claims, causes of action, and damages asserted in this Complaint.

***Vague Admissions of "Technical Issues."***

16.     Plaintiffs discovered that a manufacturing defect affecting multiple models of toilet tanks designed, manufactured, marketed and distributed by the Named Defendants caused such tanks to spontaneously crack, causing extensive damage both to real and personal property.

17.     Indeed, through the release of a recent public announcement, Vortens conceded in relevant part:

- "Tank models #3464 and #3412 may have been affected by certain technical issues that allegedly caused fractures."

- "Vortens has adjusted that manufacturing process to further minimize the probability of technical issues that might affect them."

5

*See* EXHIBIT A.

18.     Vortens' representative Carlos Andrés Ríos Pinto further publically confirmed:  "Vortens has ceased production of tank reference #3464 and has improved the manufacturing process of tank reference #3412 to correct and eliminate the possible technical issues that might affect them." *See* EXHIBIT B.

19.     Upon information, investigation, and belief, the spontaneous cracking caused by a defect in the manufacturing process is not limited to a single admitted production year or to only two models. To the contrary, such manufacturing defect has manifested the same failure mode fracturing in toilet tanks under the manufacturing, distribution, and marketing control of the Named Defendants in production batches dating at least as far back as 2004.

20.     The four Vortens toilet tanks installed in the Plaintiffs' home are all reference #3464 models.   In light of the acknowledgement that "technical issues" in the manufacturing of these models can cause spontaneous fractures, Plaintiffs realized their property was in ongoing and imminent danger of extensive damage and that the continued possession and use of such toilet tanks held a substantial risk or credible threat of impending harm.

### *Defective and Unreasonably Dangerous Condition*

21.     Expert investigation reveals that multiple toilet tank models manufactured, marketed, and distributed by the Named Defendants over the course of several years are prone to spontaneous and catastrophic failure and cracking.  The problem appears to begin

with a crack in the porcelain tank that holds the water, which ultimately causes more extensive cracking and breakage due to the water pressure inside the tank.

22.     Examination and testing of the affected tanks establishes that the tanks were either fired too rapidly or allowed to cool down too quickly or in an uneven fashion.  This flaw in manufacturing caused residual stresses to be formed in the ceramic materials.

23.     These stresses are concentrated around inclusions in the ceramic material with large stress concentration factors.  This in turn causes minute cracks that propagate due to normal and anticipated use.  During the continued emptying and fill cycles of the water in the tank, the cyclic stress on the toilet tank continues to slowly propagate these cracks until fracture and failure.

24.     This defective, unfit, and unreasonably dangerous condition exists in the affected toilet tanks at the time same leave the possession or control of the manufacturer.

### *Knowledge of the Defective Condition*

25.     Upon information and belief, prior to (and ongoing since) marketing and selling the Toilet Tanks installed in the Plaintiffs' Home, both Defendants possessed actual or constructive knowledge, or otherwise knew or should have known, that the toilet tanks in the production lines of certain models manufactured as early as 2004 and up through 2012, which included the Toilet Tanks at issue in this lawsuit, were manufactured in a defective or faulty manner and/or were defective, unreasonably dangerous, and were catastrophically failing and cracking, causing damages to the consumers and end users of these products.

26.    Defendants had specific prior knowledge of such a defect in the manufacturing process of these toilet tanks and the defective and unreasonably dangerous condition in these toilet tanks based on their own test results and reports of the exact same type of catastrophic failures and cracking in numerous other toilet tank models manufactured during this time period.

27.    Despite such prior knowledge, both defendants made a conscious decision not to issue or supply any warnings to the public or anyone else adequately alerting or notifying installers or end users of these defects, or that same were manufactured in a defective manner, prone to failure, or had a high risk of catastrophically failing and cracking under normal, expected, and foreseeable uses prior to 2016.  Furthermore, these Defendants made a conscious decision against openness as to the extent of the consumer complaints as to all of the affected models and for the full scope of the affected years of production.

28.    Despite such prior knowledge, both Defendants decided not to take any feasible measures to promptly and timely correct the defective or faulty manner in which the Toilet Tanks were manufactured, and they also made a conscious decision not to take any feasible measures to promptly and timely correct the defective and unreasonably dangerous condition in these toilet tanks or any feasible measures to promptly and timely prevent catastrophic failures and cracking in these toilet tanks, including those installed in and sold with the Plaintiffs' Home.

29.    Instead of issuing any such warnings or taking any such feasible measures, the defendants continued to market, distribute, and sell these defective toilet tanks for a

number of years without warning about the danger or timely making feasible modifications to eliminate the danger.

30.     The defective and unreasonably dangerous condition in the production line of toilet tanks manufactured 2004-2012, including those installed in the Plaintiffs' Home, was not obvious, open, visible, or discoverable by a reasonable inspection by any persons or entities, including building contractors, plumbing contractors, installers, building inspectors, or ordinary consumers, such as the Plaintiffs.

31.     Both Defendants knew or had reason to know that the Toilet Tanks installed in and sold with the Plaintiffs' Home were defective and likely dangerous for the use for which they were supplied, and they had no reason to believe that those for whose use the toilet tanks were supplied would realize their dangerous condition.

32.     Plaintiffs, and the anticipated Class Members, are faced with the unfair and untenable choice of simply waiting for the failure to occur and risk extensive damage to real and personal property or otherwise incur personal expenses to repair or remediate the impending danger.

## FRAUDULENT CONCEALMENT - DISCOVERY RULE - AFFIRMATIVE REPRESENTATIONS

33.     The Named Defendants had a duty to adequately disclose to Plaintiffs the internal knowledge of the defect of the Toilet Tanks, and further accurately identify what model references and years of production are affected.

34.     Rather than disclosing this information to Plaintiffs, the Defendants continue to actively conceal the scope of the defect and affected models through material omissions

or wordsmithing in order to hide the scope of the problem to the detriment of consumers such as Plaintiffs and the class members.  Defendants' concealment of the unsafe and unfit condition of the affected Toilet Tanks tolls the running of any applicable statute of limitations. Plaintiffs could not have, with the exercise of real caution, prudence, or diligence, discovered the defect within the applicable statute of limitations, thus tolling same.

## **MISCELLANEOUS**

35.     Plaintiffs aver that any conditions preceding the institution of this lawsuit have been performed, have occurred, and/or have been otherwise waived.

36.     By filing the lawsuit, Plaintiffs neither intend to, nor in fact do, waive or release any right, claim, action, cause of action, defense and/or election of remedy.

## **CLASS ALLEGATIONS**

37.     Plaintiffs bring this cause of action individually and on behalf all other similarly situated individuals and/or persons, pursuant to Federal Rule of Civil Procedure 23.

38.     Plaintiffs anticipate defining this Class as:

> *Any and all consumers of toilet tank models #3464, #3412, #3404, #3425, #3408 and #3571 manufactured, produced, designed, marketed, or distributed by the named Defendants between 2004-2012.*

It is further anticipated that additional sub-class definitions and classifications may ultimately be necessary upon class certification based upon the whether the toilet tanks have already been replaced or remain in need of replacement.

39.   The following persons and/or entities are excluded from the Class:

a)   Persons and/or entities who timely opt-out of this proceeding using the correct protocol for opting-out that will be formally established by this Court;

b)   Persons and/or entities who have settled or otherwise resolved claims against the Defendants arising out of or in connection with individual water or flooding damages alleged to be caused by a fractured tank of one of the relevant models, to the extent of the resolution of those claims;

c)   Any and all federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and

d)   Any currently sitting Texas state court judge and/or justice in the current style and/or any persons within the third degree of consanguinity to such judge and/or justice.

40.   In the unlikely event that the Court should determine not to certify a nationwide Class, then in the alternative, Plaintiffs seek certification of a Texas-only class.

41.   *Numerosity – Rule 23(a)(1).* Plaintiffs do not know the exact size or identities of the members of the proposed Class, since such information is in the exclusive control of the Defendants.

42.   Upon information and belief regarding the manufacture, distribution, marketing, and installation of affected Toilet Tanks by these Defendants, the class likely encompasses thousands of consumers.  It I believed that the improper temperature and lack of appropriate quality control in the manufacturing process extends at least as far back as production references in 2004 with ongoing and continuing production using the same defective processes up through 2012.  Plaintiffs believe that the Class can be readily

ascertained from Defendants' books and records reflecting model manufacturing, sales, and distribution accounts. Additionally, based on information and belief, the Class is comprised of persons disbursed across the United States, as well as in the State of Texas. As a result, joinder of persons is impracticable.

43.     The disposition of Plaintiffs' claim will provide a substantial benefit to the persons and the court system by using Rule 23 as the vehicle to adjudicate the rights of thousands of individuals and/or entities in one cause of action. Joining and naming each Class Member as a co-plaintiff is unreasonable and impracticable. Such a requirement would only result in Defendants' retention of money which is necessary to compensate this Class.

44.     *Predominance and Commonality – Rule 23(a)(2); (b)(3).* As to the Class, there are common questions of law and fact which predominate over any questions affecting individual Class Members which include, but are not limited to:

   (a)     Appropriate corporate liability structures in light of mergers, acquisitions, sales, and manufacturing control;

   (b)     Identification of the manufacturing process and quality control processes for firing the ceramic toilet tanks by the Named Defendants;

   (c)     Whether the manufacturing process and quality control processes for firing the ceramic toilet tanks by the Named Defendants was improper or otherwise defective;

   (d)     Identification of all toilet tank models and years of production subjected to the improper manufacturing process;

(e)     Whether the designated Toilet Tanks are defectively designed and unreasonably dangerous;

(f)     Whether the designated Toilet Tanks are defectively manufactured and unreasonably dangerous;

(g)     Whether the designated Toilet Tanks are prone to failure;

(h)     Whether Defendants adequately warned, or continue to adequately warn, distributors, installers, and consumers regarding the defective nature of the designated Toilet Tanks;

(i)     Whether Defendants' manufacture, sales, and distribution of the designated Toilet Tanks occurred despite actual or constructive knowledge of the defects;

(j)     Whether the Plaintiffs' use of the designated Toilet Tanks was foreseeable;

(k)     Whether Defendants will be in a better position than the consumer to prevent circulation of defective products;

(l)     Whether Defendants can distribute the cost of compensating for repair or replacement resulting from defects by charging for it in the marketplace;

(m)     Whether the designated Toilet Tanks were inspected and reached the user and/or consumer without substantial alteration in the condition that the product was designed, manufactured, marketed, sold, and/or distributed;

(n)     Whether Defendants failed to adequately warn consumers that the designated Toilet Tanks were defective and/or reasonably dangerous at the time it left Defendants' control;

(o)     Whether the imposition of strict liability upon Defendants serves as an incentive to properly design, manufacture, market, and/or distribute safe products;

(p)     Whether restitution is an appropriate remedy for the Plaintiffs and Class Members;

(q)     Whether remediation and removal of the designated Toilet Tanks
is an appropriate remedy to Plaintiffs and Class Members;

(r)     Whether Class Members are entitled to monetary damages for
Defendants' wrongful conduct;

(s)     Whether Class Members are entitled to an injunction requiring
Defendants to cease and desist from selling, marketing,
distributing, and/or placing into the stream of commerce any
remaining inventory of the designated Toilet Tanks;

(t)     Whether Defendants are required to pay reasonable and necessary
attorney's fees and costs associated with prosecuting this lawsuit.

45.     Furthermore, there are common questions of law and fact that are based in
the same core evidence for all members of the Class such as: (1) the timeline of available
knowledge to the Defendants regarding the defective designated Toilet Tanks; (2) the
scope of the sale and installation of designated Toilet Tanks; (3) the defect in designated
Toilet Tanks; and (4) the causal link between the deceptive, intentional and/or reckless
acts of the Defendants and the damages.

46.     *Typicality – Rule 23(a)(3)*. The claims asserted by Plaintiffs are typical of
the claims of the Class.  The Plaintiffs and the proposed Class Members are persons or
legal entities who have one or more of the designated Toilet Tanks installed in their home
or building. To the extent necessary, sub-classes can be defined within the proposed class
definition.

47.     *Adequacy of Representation – Rule 23(a)(4).* Named Plaintiffs will fairly
and adequately represent the claims of the Class members because Named Plaintiffs have
an interest in seeing their claims through to resolution which will at the same time resolve

14

the claims of the class-members.  The Named Plaintiffs are comprised of consumers of the designated Toilet Tanks, and have suffered the categories of injury alleged in this cause.

48.     Plaintiffs are represented by competent counsel who have extensive experience in class action and consumer advocacy generally, and further who have extensive and specific experience with claims regarding products liability generally and the defective toilet tanks manufactured, distributed, sold, and installed by these Defendants specifically.  Such counsel can bear the cost of prosecuting the class action to conclusion. None of the Plaintiffs is antagonistic with the Class or has an interest in conflict with the Class.

49.     _Superiority – Rule 23(b)(3)_.  This Class Action is not only the appropriate method for the fair and efficient adjudication of the controversy, but is, in fact, the superior method to all other available causes of action for the following reasons:

a)     The joinder of thousands of geographically diverse individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b)     There is no special interest by Class Members and individually controlling prosecution of separate causes of action;

c)     Class Members' individual claims now may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, expensive, if not totally impossible, to justify individual Class Members addressing their loss;

d)     When Defendants' liability has been adjudicated, claims of all Class Members can be determined by the court and administered efficiently in a manner which is far less erroneous, burdensome, and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

e)      This Class Action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of class claims to promote economies of time, resources, and limited pool of recovery;

f)      This Class Action will assure uniformity of decisions in litigation;

g)      Without the Class Action, Class Members will go without restitution, remediation or money damages;

h)      Without this Class Action, the restitution and/or remediation damages will be borne by the Class members and Defendants will reap the benefits of profits from defectively designed, manufactured, marketed, and/or distributed products;

i)      The resolution of this controversy through this Class Action presents fewer management difficulties than individual claims filed in which the parties may be subject to varying adjudications of their rights;

j)      Injunctive relief will be available to protect all future consumers from the sale, marketing, and/or distribution defective or unreasonably dangerous products.

50.     A class action is a superior mechanism in this case to individual actions because Defendants have acted in a way that is consistent as to all Plaintiffs and Class Members as to the designated Toilet Tanks, and thus relief would apply to the Class as a whole.  Furthermore, a class action is a superior mechanism to individualized adjudications because prosecuting separate actions by individual class members risk creating inconsistent rulings and standards of conduct.

## <u>COUNT I—STRICT LIABILITY</u>

51.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 34 of this Complaint, as if fully set forth at length herein.

52.     Defendant Vortens and Defendant Sanitarios, are in the business of designing, manufacturing, distributing, and selling, among other things, "ceramic" toilet

tanks for consumer use in residential homes, including toilet tanks of the same make and model as the Toilet Tanks installed in and sold with the Plaintiffs' Home.

53.     The Toilet Tanks installed in and sold with the Plaintiffs' Home were designed, manufactured, distributed, and/or sold by Defendant Vortens, and/or Defendant Sanitarios.

54.     In the alternative, the Toilet Tanks were designed, manufactured, distributed, and/or sold by Defendant Vortens, and contemporaneous with and/or subsequent thereto, Defendant Sanitarios, by way of merger, consolidation, acquisition, and/or an asset purchase agreement expressly, impliedly, and/or by operation of law acquired and assumed any and all of Vortens' liabilities arising out of the design, manufacture, distribution, and sale of these two Vortens toilet tanks, including any and all liabilities arising from any defective condition and/or failure in these toilet tanks.

55.     The Toilet Tanks installed in the Plaintiffs' Home were unreasonably dangerous, not reasonably safe for use, and were defective at the time they left the possession or control of the manufacturer because they contained a manufacturing defect and a marketing defect.

56.     The Toilet Tanks contained a manufacturing defect and were unreasonably dangerous or otherwise unfit for the intended purpose because these products deviated in their construction or quality from the specifications or planned output in a manner that rendered them unreasonably dangerous or unfit. More specifically, tank references #3464, #3412, #3404, #3425, #3408 and #3571 manufactured, produced, designed, marketed, or distributed by the named Defendants between 2004-2012 were

17

subjected to improper temperature controls and further not properly tested under appropriate quality control checks.  Such improper manufacturing resulted in defects in the designated reference models unknown to the consumer, such as the Plaintiffs, but which was known or should have been known by the Named Defendants.

57.    The Toilet Tanks also contained a marketing defect and were unreasonably dangerous because the risk of harm was inherent in these products or could arise from the intended or reasonably anticipated use of these products, and Defendants actually knew or reasonably foresaw this risk of harm at the time the products were marketed, or the Defendants, by the application of reasonably developed skill and foresight, should have known about the inherent risk and danger in these products, but marketed and sold same without any adequate warnings that would alert any party or end user that they were manufactured in a defective manner, prone to failure, or had a high risk of catastrophically failing and cracking, which rendered the toilet tanks unreasonably dangerous or unfit for intended use to the ultimate user or consumer of the toilet tanks, such as the Plaintiffs.

58.    These Toilet Tanks were expected to and did reach the consumers, the Plaintiffs and Class Members, without substantial change in the condition in which they were sold.

59.    The manufacturing defect and the marketing defect in the Toilet Tanks installed in and sold cause catastrophic failure and cracking, and were producing causes and/or proximate causes of the damages of repair and remediation suffered by the Plaintiffs' as described herein.  Such damages include, but are not necessarily limited to,

additional costs for the repair and/or replacement of designated Toilet Tanks.  Additional

costs are further pending for final repair or removal of remaining designated Toilet Tanks.

60.    The cost of removing or remediating the designated Toilet Tanks is

prohibitive to many homeowners, and the act of shifting the costs such measures is the very

type of market failure and economic harm consumer protection laws was designed to

prevent.  Plaintiffs and the class members are left with few options – accept the risk to real

and personal property and any associated diminution in value of their structures, or

undertake personal costly measures to mitigate the damages caused by the Defendants'

conduct.

61.    As a direct, producing, and proximate result of the defective condition of the

designated Toilet Tanks, the Plaintiffs and Class Members have suffered damages in

amounts equal to inspection, replacement, and remedial installation plumbing services, and

further to any increase in risk insurability or alternative diminution in value, and neither

the defendants nor any other third party, person, or entity has compensated the Plaintiffs or

Class Members for such damages.

## COUNT II—BREACH OF IMPLIED WARRANTY

62.    Plaintiffs incorporate by reference the allegations set forth in paragraphs 1

through 34 and of paragraphs 51 through 61 of this Complaint, as if fully set forth at length

herein.

63.    Defendants are merchants with respect to goods of the kind as the designated

Toilet Tanks installed in and sold with the Plaintiffs' Home.

64.     By selling these designated Toilet Tanks, Defendants impliedly warranted that these tanks were fit for the ordinary purposes for which such goods are used.

65.     Defendants breached this implied warranty of merchantability.

66.     Pleading in the alternative, Defendant Vortens sold the designated Toilet Tanks and breached the implied warranty of merchantability arising out of the sale of same, the liability for which was expressly, impliedly, and/or by operation of law acquired and assumed by Defendant Sanitarios.

67.     As a direct, producing, and proximate result of the defective condition of the designated Toilet Tanks, the Plaintiffs and Class Members have suffered damages in amounts equal to inspection, replacement, and remedial installation plumbing services, and further to any increase in risk insurability or alternative diminution in value, and neither the Defendants nor any other third party, person, or entity has compensated the Plaintiffs or Class Members for such damages.

## COUNT III- NEGLIGENCE

68.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 34 and of paragraphs 51 through 61 of this Complaint, as if fully set forth at length herein.

69.     Defendants owed the Plaintiffs and Class Members a duty of care to manufacture, market, distribute, and sell the designated Toilet Tanks in a safe and non-defective manner so as to avoid injury or damage to the Plaintiffs, Class Members, and their property.

70.     Defendants breached this duty of care and were negligent because these designated Toilet Tanks were manufactured, marketed, distributed, and sold in a defective and unreasonably dangerous condition that cause the toilet tanks to catastrophically fail and crack.

71.     Specifically, Defendants were negligent by committing, among others, the following negligent acts of commission and omission:

a.  Negligently using a faulty manufacturing process to manufacture the designated Toilet Tanks, which causes these toilet tanks to catastrophically fail and crack because they underwent uneven heating/curing and were not properly fired or cured during the manufacturing process;

b.  Negligently failing to properly and timely inspect and test any of the toilet tanks that were part of the production line of toilet tanks manufactured 2004-2012 to ensure that these toilet tanks were manufactured in a safe and non-defective manner, and that the toilet tanks did not deviate in their construction or quality from the specifications or planned output in a manner that rendered them unreasonably dangerous or unfit for the intended purpose.

c.  Negligently failing to warn or adequately warn any party, consumer, or end user that the ceramic toilet tanks manufactured 2004-2014 were manufactured in a defective manner, prone to failure, or had a high risk of catastrophically failing and cracking, which render the designated Toilet Tanks unreasonably dangerous to the Plaintiffs or are other unfit for the intended purpose.

d.  Committing other negligent acts of commission and omission that may be revealed through further investigation, including discovery.

72.     Pleading in the alternative, Defendant Vortens breached the aforesaid duty of care and was negligent for the reasons stated above, the liability for which was expressly, impliedly, and/or by operation of law acquired and assumed by Defendant Sanitarios.

73.     As a direct and proximate result of the breach of duty and negligent acts of commission and omission, the Plaintiffs and Class Members have suffered damages in

21

amounts equal to inspection, replacement, and remedial installation plumbing services, and further to any increase in risk insurability or alternative diminution in value, and neither the Defendants nor any other third party, person, or entity has compensated the Plaintiffs or Class Members for such damages.

## COUNT V- PUNITIVE DAMAGES

74.     Plaintiffs incorporate by reference the allegations set forth in all prior paragraphs of this Complaint, as if fully set forth at length herein.

75.     As a direct and proximate result of the catastrophic failures and cracking in the designated Toilet Tanks installed in and sold with the Plaintiffs' Home and real property owned by Class Members, the Plaintiffs and Class Members suffered damages as described herein.

76.     Prior to marketing and selling the designated Toilet Tanks at issue in this case, and/or prior to the catastrophic failures and cracking of same, both Defendants, upon information and belief, knew for an extended period of time that the toilet tanks in the production line manufactured between 2004 and 2012 were manufactured in a defective or faulty manner and/or were defective, unreasonably dangerous, and were catastrophically failing and cracking under normal, expected, and foreseeable uses, causing water and property damages to the consumers and end users of these products.

77.     Defendants had specific prior knowledge of such a defect in the manufacturing process of these toilet tanks and the defective and unreasonably dangerous condition in these toilet tanks based on their own test results and reports of the exact same

type of catastrophic failures and cracking in numerous other toilet tanks manufactured, distributed, and/or sold by them between 2004 and 2012.

78.     Upon information and belief, both Defendants had prior knowledge that there was a high probability that the designated Toilet Tanks manufactured between 2004 and 2012 would catastrophically fail and crack under normal, expected, and foreseeable uses, and cause damages to the ultimate user or consumer, including the Plaintiffs and Class Members.

79.     Despite such prior knowledge, both Defendants knowingly and/or intentionally made a conscious decision not to issue or supply any warnings adequately alerting or notifying the public or any persons or entities, including building contractors, plumbing contractors, installers, building inspectors, or ordinary consumers and end users of these designated Toilet Tanks, such as the Plaintiffs, that these toilet tanks were manufactured in a defective manner, prone to failure, or had a high risk of catastrophically failing and cracking under normal, expected, and foreseeable uses.  Indeed, to the contrary, the Named Defendants are providing limited information as to the scope of the defect, the affected references, and the production span.

80.     Despite such prior knowledge, both Defendants also knowingly and/or intentionally made a conscious decision not to take any feasible measures to promptly and timely correct the defective or faulty manner in which the designated Toilet Tanks were manufactured, and they also knowingly and/or intentionally made a conscious decision not to take any feasible measures to promptly and timely correct the defective and unreasonably dangerous condition in these designated Toilet Tanks or any feasible

measures to promptly and timely prevent catastrophic failures and cracking in these toilet tanks

81.     Each of the Defendants also engaged in willful and wanton conduct and/or were grossly negligent, in that the conduct of each Defendant in marketing and selling the products at issue was so reckless or wanting in care that it constituted a conscious disregard or indifference to the welfare, safety, and/or rights of persons exposed to such conduct, including the Plaintiffs and Class Members.

82.     Pleading in the alternative, Defendant Vortens committed the willful, wanton, and wrongful conduct and/or gross negligence described above, the liability for which was expressly, impliedly, and/or by operation of law acquired and assumed by Defendant Sanitarios.

83.     As a direct and proximate result of the aforesaid willful, wanton, and wrongful conduct and/or gross negligence described above, the Plaintiffs and Class Members are entitled to recover punitive damages from Defendant Vortens, and/or Defendant Sanitarios.

### COUNT VI-ACTION UNDER THE DTPA
### (NOTICE AND ABATEMENT CONSIDERATIONS INCLUDED)

84.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1-34 and 51-83 of this Complaint as if fully set forth at length herein.

85.     The Plaintiffs and proposed Class Members  are "consumers" within the meaning of § 17.45(4) of the Texas Deceptive Trade Practices Act (DTPA), in that they are individuals who acquired by purchase the goods or products that form the basis of this

lawsuit, and suffered damages for which they did not receive compensation from any third party, person, or entity.

86.     The Plaintiffs seek to recover damages against both Defendant Vortens and Defendant Sanitarios under the Texas DTPA, Tex. Bus. & Com. Code Ann. § 17.41 *et. seq.*, because the Defendants knowingly and/or intentionally breached their implied warranties with respect to the designated Toilet Tanks at issue in this lawsuit, and also engaged in the following false, misleading, or deceptive acts or practices in the conduct of their trade or business:

    a.  Representing that the designated Toilet Tanks at issue had characteristics, ingredients, uses, or benefits which they do not;

    b.  Representing that the designated Toilet Tanks at issue were of a particular standard, quality, or grade, when they were in fact of another.

87.     The Defendants engaged in the foregoing false, misleading, or deceptive acts or practices because (a) they knew for an extended period of time that the designated Toilet Tanks at issue were part of an entire production line of products that were manufactured in a defective manner, prone to failure, and had a high risk of catastrophically failing and cracking, which rendered the toilet tanks unreasonably dangerous to the Plaintiffs; and (b) despite this knowledge, the Defendants (i) knowingly and/or intentionally did not warn the public or any other person or entity about this unreasonably dangerous condition; (ii) knowingly and/or intentionally used and promptly or timely failed to correct the defective the faulty manner in which the designated Toilet Tanks were manufactured; (iii) knowingly and/or intentionally failed to take any feasible measures to promptly and timely correct the

25

defective and unreasonably dangerous condition in these toilet tanks; and (iv) knowingly and/or intentionally failed to take any feasible measures to promptly and timely prevent catastrophic failures and cracking in these toilet tanks.

88.    The Defendants' conduct in engaging in such false, misleading, or deceptive acts or practices constituted a producing cause of the damages suffered by the Plaintiffs such that the Plaintiffs have the right and standing to maintain an action against Defendants under the Texas DTPA pursuant to § 17.50

89.    The Plaintiffs also have the right and standing to maintain an action against Defendants under the Texas DTPA pursuant to § 17.50(a) (2) of the Act, because they breached their implied warranties as stated in Count II of this complaint, and such a breach constituted a producing cause of the damages suffered by the Plaintiffs at issue in this lawsuit.

90.    With respect to the foregoing described warranties, the Defendants knowingly breached their implied warranties because they had actual awareness of the defective and unreasonably dangerous condition in the designated Toilet Tanks at issue and the faulty manufacturing process that created this defective and unreasonably dangerous condition, and Defendants also had actual awareness of their failure to warn about and take feasible measures to timely correct or prevent this defective and unreasonably dangerous condition and/or the aforesaid faulty manufacturing process.

91.    The Defendants also intentionally breached their implied warranties because they had actual awareness of the conditions, defects, and failures in the toilet tanks as described above, coupled with the specific intent that the consumer, such as the Plaintiffs,

act in detrimental ignorance of the unfairness of the Defendants' conduct in manufacturing, marketing, and selling the designated Toilet Tanks at issue, as evidenced by Defendants' knowing and/or intentional failure to warn about the defective and unreasonably dangerous condition in the toilet tanks at issue and the faulty manufacturing process that created this defective and unreasonably dangerous condition.

92.     The Defendants' violations of the Texas DTPA proximately caused the Plaintiffs and Class Members damages in the form of inspection, replacement, and remedial installation plumbing services and products, and further to any increase in risk insurability or alternative diminution in value, and neither the defendants nor any other third party, person, or entity has compensated the Plaintiffs or Class Members for such damages.

93.     Pursuant to § 17.50(d) of the Texas DTPA, the Plaintiffs and Class Members are entitled to be awarded court costs and reasonable and necessary attorneys' fees.

94.     Because the Defendants' conduct as described above in this Count VI was committed knowingly and/or intentionally, the Plaintiffs and Class Members are also entitled to be awarded treble damages.

95.     Pleading in the alternative, Defendant Vortens violated the Texas DTPA as described above, the liability for which was expressly, impliedly, and/or by operation of law acquired and assumed by Defendant Sanitarios.

96.     Plaintiffs aver that notice under Section 17.505 prior to filing suit was both impractical and unnecessary considering the public admissions of a defect in the affected toilet tanks.  Furthermore, Plaintiffs have committed to resolution of the litigated issues not

only in their individual capacity but also as Class Representatives.  Therefore, Plaintiffs are not in a position to individually resolve their claims to the detriment of the putative class.

97.     In addition to the formal service required by the Federal Rules of Civil Procedure regarding process, Plaintiffs are providing a courtesy copy of this Complaint along with an explanatory letter in compliance with the Texas Deceptive Trade Practices Act.

98.     Plaintiffs will further comply with the requirements of § 17.501 regarding notice of this Complaint to the Consumer Protection Division within the deadlines articulated therein.

## INJUNCTIVE RELIEF

99.     Plaintiffs hereby seek injunctive relief to enjoin the Defendants from further selling, marketing, distributing, and/or placing the designated Toilet Tanks in the stream of commerce without making it safe for its ordinary and/or intended purposes and/or absent clear and specific warning to all consumers, including direct notification of homeowners as well as distributers and/or installers, regarding the dangers of these defective Toilet Tanks.

## RELIEF REQUESTED

100.     Plaintiffs, Individually and as Class representatives on behalf of all similarly situated persons and/or entities respectfully request that the Court grant the following relief and/or enter judgment against the named Defendants, jointly and severally as follows:

a)      Certify this cause of action as a class action pursuant to Rule 23 and appoint Plaintiffs as Class representatives and Plaintiffs' counsel as Class counsel;

b)      Order that Defendants must pay for notice to be sent to all class members;

c)      Find that the named Defendants are jointly and severally liable for Plaintiffs' and Class Member's injuries and economic losses;

d)      Award appropriate monetary damages to Plaintiffs and the proposed Class in an amount equal to the amount to remove the repair or replace the defective product and all inspection or installation costs reasonably associated with same;

e)      Alternatively, or in further conjunction with the above damages, award an amount equal to the loss or diminution in value of a structure in which the product is installed;

f)      Award such equitable relief permitted, including an injunction requiring Defendants to notify all Class Members that they are entitled to submit an additional or supplemental request for payment in connection with prior loss and/or damage to their structures and/or premises;

g)      Order Defendants to engage in accurate, corrective educational advertising;

g)      Award pre-judgment interest to prevent Defendants from receiving unjust enrichment from their improper conduct;

h)      Award reasonable and necessary attorneys' fees and costs to Class counsel; and

i)      Award such other and further relief in law or in or equity as the Court determines fair, reasonable, appropriate, and/or just deems just;

Respectfully submitted,

<u>        /s/ N. Scott Carpenter        </u>
**N. SCOTT CARPENTER**
State Bar No. 00790428
**REBECCA E. BELL-STANTON**
State Bar No. 24026795
CARPENTER & SCHUMACHER, P.C.
2701 NORTH DALLAS PARKWAY, SUITE 570
Plano, Texas 75093
(972) 403-1133
(972) 403-0311 [Fax]
**scarpenter@cstriallaw.com**
**rstanton@cstriallaw.com**

*ATTORNEYS FOR PLAINTIFFS AND*
*PROPOSED CLASS*