IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| STEVEN AND JOANNA CONE, ET AL., | § |
| | § |
| Plaintiffs, | § |
| | § |
| v. | § |
| | § CASE NO. 4:17-CV-00001-ALM-KPJ |
| VORTENS, INC., SANITARIOS | § |
| LAMOSA S.A. DE C.V., and | § |
| PORCELANA CORONA DE MEXICO, | § |
| SA. DE C.V., | § |
| | § |
| Defendant. | § |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Porcelana Corona de Mexico, S.A. de C.V. f/k/a Sanitarios Lamosa S.A. de C.V. a/k/a Vortens' ("Defendant") Motion to Exclude Expert Opinions of Shawn Capser (the "First Motion") (Dkt. 106), to which Plaintiffs filed a response (Dkt. 123), Defendant filed a reply (Dkt. 127), and Plaintiffs filed a sur-reply (Dkt. 132). Also before the Court is Defendant's Motion to Exclude Plaintiffs' Untimely Expert Report (the "Second Motion") (Dkt. 133) to which Plaintiffs filed a response (Dkt. 146), Defendant filed a reply (Dkt. 153), and Plaintiffs filed a sur-reply (Dkt. 158). Both motions (collectively, the "Motions") (Dkts. 106, 133) involve Plaintiffs' expert, Dr. Shawn Capser ("Dr. Capser"). As set forth below, the Court finds both Motions (Dkts. 106, 133) are **DENIED**.

### I. BACKGROUND

This action arises from alleged manufacturing and/or marketing defects in certain ceramic Vortens toilet tanks. Plaintiffs' Second Amended Complaint and Class Action (Dkt. 74) is the operative complaint herein. The toilet tanks at issue were manufactured, designed, produced, and distributed by Sanitarios Lamosa, now known as Porcelana Corona. *See* Dkt. 74 at ¶¶ 16-17. As a

result of their claimed damages, Plaintiffs have alleged four causes of action against Defendant: (1) strict products liability; (2) breach of implied warranty; (3) negligence; and (4) violations of the Texas Deceptive Trade Practices Act ("DTPA"). *Id*. at ¶¶ 119-157. Plaintiffs seek injunctive relief and monetary damages against Defendant, including exemplary damages, treble damages under the Texas DTPA, and attorneys' fees. *Id*. at ¶¶ 158-165. Plaintiffs also seek to represent a putative class defined as all owners of Vortens toilet tank models #3464, #3412, #3404, #3425, and #3436 manufactured by Defendant between 2004-2012. *Id*. at ¶¶ 96-97. The parties have reached a settlement agreement as to some tanks and some years (*see* Dkt. 191), but they have not reached agreement regarding all claims (*see* Dkt. 188). Accordingly, Plaintiffs' Second Motion for Class Certification (Dkt. 194) with respect to those remaining claims is currently pending before the Court.

## II. LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. While the district court must act as a gatekeeper to exclude all unreliable expert testimony, "the rejection of expert testimony is the exception rather than the rule." FED. R. EVID. 702 advisory committee's notes (2000) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, (1999)). Expert testimony is admissible only if the proponent demonstrates that: (1) the expert is qualified; (2) the evidence is relevant to the case; and (3) the evidence is reliable. *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988-89 (5th Cir. 1997).

In this case, Defendant's challenges to Dr. Capser with respect to the First Motion primarily focus on the reliability of his opinions. To be reliable and therefore admissible under Rule 702 of the Federal Rules of Evidence, expert testimony as to a scientific, technical, or other specialized area must: (1) assist the trier of fact to understand the evidence or to determine a fact in issue; (2)

be based upon sufficient facts or data; (3) be the product of reliable principles and methods; and (4) have reliably applied the principles and methods to the facts. FED. R. EVID. 702. In evaluating the scientific validity or reliability of expert testimony, the Court in *Daubert* noted some non-exclusive factors for the district court to consider: (1) whether the theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the method used; (4) the existence and maintenance of standards and controls in the methodology; and (5) whether the theory or method has been generally accepted by the scientific community. *Daubert*, 509 U.S. at 593-94. "But, as the Court stated in *Daubert*, the test of reliability is "'flexible,' and the *Daubert* factors neither necessarily nor exclusively apply to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire*, 526 U.S. at 151.

In determining the admissibility of expert testimony, the trial court is not to consider the conclusions generated by an expert witness, but only the principles and methodology used to reach those conclusions. *See Daubert*, 509 U.S. at 595. "When the principles and methodology are sufficient to allow the expert opinion to be presented to the jury, the party challenging the testimony must resort to 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof' as the means to attack 'shaky but admissible evidence.'" *Burton v. Wyeth-Ayerst Labs. Div. of American Home Prods. Corp.*, 513 F. Supp. 2d 708, 710 (N.D. Tex. 2007) (citing *Daubert,* 509 U.S. at 596).

### III. <u>ANALYSIS</u>

Dr. Capser is Plaintiffs' designated statistics expert. *See* Dkt. 106. Dr. Capser provided a Preliminary Investigative Report (the "Preliminary Report") (Dkt. 106-2) on January 16, 2018,

and a Supplemental Report (the "Supplemental Report") (Dkt. 133-1) on April 20, 2018. The First Motion (Dkt. 106), filed on April 23, 2018, objects to the substance of the opinions in the Preliminary Report and seeks to exclude Dr. Capser's testimony altogether. *See* Dkt. 106. The Second Motion (Dkt. 133), filed on May 21, 2018, objects to the Supplemental Report because it was provided to Defendant after the expert discovery deadline of April 9, 2018.[1] *See* Dkt. 133.

On September 14, 2017, the Court entered a First Amended Class Certification Scheduling Order (Dkt. 50) establishing the following deadlines related to expert discovery: (1) Plaintiffs' deadline to serve expert reports on January 16, 2018; (2) Defendant's deadline to serve expert reports on February 15, 2018; (3) deadline for completion of expert discovery on March 9, 2018; and (4) deadline to file a Daubert/Kumho challenge to any designated expert on March 21, 2018. *See* Dkt. 50.

Plaintiffs designated Dr. Capser on January 16, 2018, and Defendant designated their experts, on February 15, 2018. Wilson Martinez ("Mr. Martinez"), Defendant's current plant manager, was one of the experts designated by Defendant on February 15, 2018. *See* Dkt. 133 at 1. The parties timely submitted expert reports with their designations. *See id*. Dr. Capser was deposed March 5, 2018, and Mr. Martinez was deposed March 8, 2018. *Id*. Apparently, the report submitted by Mr. Martinez opined that Dr. Capser had "misinterpreted" the data on which his opinions were based, and thereafter, Defendant provided revised data to Plaintiffs at Mr. Martinez's deposition on March 8, 2018. *Id*. On February 26, 2018, a Second Amended Scheduling Order (Dkt. 100) was entered, pursuant to the parties' joint motion (Dkt. 98), extending the deadline for completion of expert discovery to April 9, 2018, and the deadline to file a Daubert/Kumho challenge to any expert witness to April 23, 2018. *See* Dkt. 100.

---

[1] The Court notes that while the basis asserted for the Second Motion is the timelines of the Supplemental Report, Defendant continues to attack the substance of the opinions contained therein. *See generally* Dkt. 106.

### A. RELIABILITY OF DR. CAPSER'S OPINIONS

Defendant seeks to exclude Dr. Capser's opinions and testimony regarding the accuracy of Defendant's "claim rate and [its] production and release of alleged defective product," opinions and testimony which Defendant argues are unreliable and unsupported. *See generally* id. Anticipating that Plaintiffs will attempt to offer Dr. Capser's testimony as evidence of numerosity as required by Federal Rule of Civil Procedure 23, Defendant further argues that Dr. Capser's opinions are not reliable support for class certification purposes. *Id.* at 14. Plaintiffs respond that: (1) Dr. Capser applied accepted methodologies in reaching his opinions; and (2) his opinions meet the *Daubert* standard for class certification consideration. *See generally* Dkt. 123.

"Issues arising out of the use of expert witnesses at the class certification stage have beguiled the federal courts[.] . . . The problem, if problem it be, is one of a mismatch between evidence and timing, with ultimate merits evidence being weighed before the conclusion of the discovery phase of the lawsuit." 3 NEWBERG ON CLASS ACTIONS § 7:24 (5th ed.). In *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), the Supreme Court made clear that courts could—and indeed should—look at the merits at certification. *Id.* at 350-51. (Concluding that the rigorous analysis required to determine the certification question will necessarily "entail some overlap with the merits of the plaintiff's underlying claim."). Following *Wal-Mart*, the trend has been that courts will apply some form of *Daubert* analysis at class certification. The split is whether the approach should be limited or whether a full and conclusive *Daubert* analysis, including an assessment of the expert's persuasiveness, is required. 3 NEWBERG ON CLASS ACTIONS § 7:24

While the Fifth Circuit has not explicitly decided this question since *Wal-Mart*, the courts in this circuit appear to follow a limited *Daubert* approach. *See, e.g.*, *Steward v. Janek*, 315 F.R.D. 472, 478 (W.D. Tex. 2016); *Ancar v. Murphy Oil, U.S.A, Inc.*, 2007 WL 3270763, at *1 (E.D. La.

2007) ("A full review under *Daubert* is not suitable to class certification proceedings."); *Turner v. Murphy Oil USA, Inc.*, 2006 WL 91364 (E.D. La. 2006) (concluding that only a limited *Daubert* review was appropriate at the class certification stage). As the Court explained in *Turner*:

> [A] district court may not weigh conflicting expert evidence or engage in a statistical dueling of experts. The question for the district court at the class certification stage is whether the plaintiffs' expert evidence is sufficient to demonstrate common questions of fact warranting certification of the proposed class, not whether the evidence will ultimately be persuasive.

*Turner v. Murphy Oil*, 2006 WL 91364, at *3 (citing *In re Visa Check/Master Money Antitrust Litig.*, 280 F.3d 124, 135 (2d Cir. 2001) (internal quotation marks omitted)). In other words, with respect to expert evidence at the class certification stage, "the Federal Rules of Evidence apply, albeit in a relaxed fashion." *Anderson Living Trust v. WPX Energy Prod., LLC*, 306 F.R.D. 312, 377 (D.N.M.), *adhered to on reconsideration*, 312 F.R.D. 620 (D.N.M. 2015).

Under this "limited" or "relaxed" *Daubert* analysis, a court is required to review the expert's opinion to ensure that it contains no flaws that would render it inadmissible as a matter of law. *Ancar v. Murphy Oil*, 2007 WL 3270763, at *2 (internal citations omitted). Thus, the court's review should be limited to the opinion's reliability and relevance to the requirements of class certification. *Id*. Furthermore, the court does not determine at this time whether the expert opinion would pass muster at the time of trial on issues like causation; nor does the Court's ruling at the time of class certification preclude a full *Daubert* analysis at the appropriate time. *Id*.

The Court finds that Dr. Capser's testimony meets these requirements. Dr. Capser is qualified in the field of statistical and reliability methods, and he is a certified Master Black Belt in *Six Sigma*. *See* Dkt. 146-4 at 4. His substantial knowledge, skill, experience, training, and education in these areas will assist the trier of fact. In addition, Dr. Capser's methodology includes generally-accepted methods and principles within the field of statistics, including the application

of *Six Sigma* metrics and statistics. *See, e.g.*, Dkt. 146-1; 146-4; 146-5; 146-8. Therefore, the Court finds the testimony is admissible at this stage of the litigation. Because Defendant's challenges to Dr. Capser's opinions go primarily to the weight of his opinions, Defendant must resort to "vigorous cross-examination" and "presentation of contrary evidence" as the means to attack admissible evidence it considers to be "shaky." *Burton v. Wyeth-Ayerst Labs.*, 513 F. Supp. 2d at 710 (citing *Daubert*, 509 U.S. at 596) (internal quotation marks omitted).

### B. TIMELINESS OF THE SUPPLEMENTAL REPORT

With respect to the Second Motion (Dkt. 133), Defendant complains that "Plaintiffs waited until 4:45 p.m. on April 20, 2018, the Friday before the Monday deadline to file Daubert/Kumho challenges to expert witnesses, [and] to submit Dr. Capser's [S]upplemental [R]eport." Dkt. 133 at 2. Defendant argues the Supplemental Report was intended to correct deficiencies in the Preliminary Report and avoid exclusion. *See* Dkt. 133 at 3. Defendant objects to "this second bite at the apple" and notes that Plaintiffs failed to seek leave of Court to supplement their expert witness opinions and did not seek an extension of the expert designation deadlines. *Id.* (citing *Metro Ford Truck Sales, Inc. v. Ford Motor Co.*, 145 F.3d 320, 324 (5th Cir. 1998)). Plaintiffs respond that the Supplemental Report was timely pursuant to Federal Rule of Civil Procedure 26(e). *See* Dkt. 146 at 2.

"Rule 26(a) requires the expert's initial report to include 'a *complete* statement of all opinions the witness will express and the basis and reasons for them.'" *Culter v. Louisville Ladder, Inc.*, 2012 WL 2994271, at *5 (S.D. Tex. 2012) (quoting FED. R. CIV. P. 26(a)(2)(B)(i) (emphasis in original)). In addition, the Federal Rules of Civil Procedure impose a duty to supplement expert reports. *See* FED. R. CIV. P. 26(a)(2)(E); 26(e). "The purpose of rebuttal and supplementary disclosures is just that—to rebut and to supplement. These disclosures are not intended to provide

7

an extension of the deadline by which a party must deliver the lion's share of its expert information." *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 572 (5th Cir. 1996); *see also Culter*, 2012 WL 2994271 at *5; *Gallagher v. S. Source Packaging, L.L.C.*, 568 F. Supp. 2d 624, 631 (E.D.N.C. 2008) ("Courts distinguish 'true supplementation' (e.g. correcting inadvertent errors or omissions) from gamesmanship, and have therefore repeatedly rejected attempts to avert summary judgment by 'supplementing' an expert report with a 'new and improved' expert report."). The decision to strike a "supplemental" report, however, lies within the discretion of the court. *See Reliance Ins. Co. v. La. Land & Exploration Co.*, 110 F.3d 253, 257–58 (5th Cir. 1997) (finding that the district court did not abuse its discretion in refusing to allow a late filed supplemental report).

Federal Rule of Civil Procedure 16(b) authorizes federal courts to control and expedite the discovery process through a scheduling order. FED. R. CIV. P. 16(b). Rule 37(b)(2)(B) authorizes the district court to impose sanctions on a disobedient party by refusing to allow that party to introduce designated matters into evidence. FED. R. CIV. P. 37(b)(2)(B). The following four factors are considered when a district court excludes expert testimony as a sanction for a violation of a discovery order:

> (1) the explanation, if any, for the party's failure to comply with the discovery order;
>
> (2) the prejudice to the opposing party of allowing the witnesses to testify;
>
> (3) the possibility of curing such prejudice by granting a continuance; and
>
> (4) the importance of the witnesses' testimony.

*Sierra Club v. Cedar Point Oil Co. Inc.*, 73 F.3d at 572.

Upon review of these factors, the Court finds that exclusion of the Supplemental Report is not warranted under these circumstances. First, the Court finds Plaintiffs' explanation for the delay

to be reasonable in light of Defendant's supplementation of discovery during and after Mr. Martinez's deposition on March 8, 2018 (*see, e.g.*, Dkt. 146-8), the production of "more than 25,000 additional pages of claims materials" on April 11, 2018 (*see* Dkt. 146 at 6), and Dr. Capser's apparent "misinterpretation" arising from the manner by which data was "filtered" for a single tank model vs. a "family" of models (*see* Dkts. 146 at 5-6: 146-8 at 8, 12). Furthermore, the analysis in the Supplemental Report contains no new categories of opinions, but rather revises the analysis in the Preliminary Report as a result of the supplemental production by Defendant. Thus, the first factor supports a finding that the supplementation was justified.

The second and third factors also weigh in favor of allowing the Supplemental Report. Defendant failed to explain how it will suffer any prejudice, nor does it specifically identify any new opinions or "last-minute conclusions" not previously contemplated. *Compare Reliance Ins. Co. v. La. Land & Exploration Co.*, 110 F.3d 253, 257–58 (5th Cir.1997). Moreover, Plaintiffs' motion for class certification remains pending, and it is likely that future discovery in preparation of a trial on the merits will require additional supplementation of the statistical analyses and the conclusions arising therefrom.

Finally, there is no credible argument that Dr. Capser's opinions lack importance since his opinions involving the lack of process control to prevent the distribution of defective product potentially provide the basis for the Rule 23 numerosity element, as well as Plaintiffs' product defect theory.

### IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court finds that the testimony of Plaintiffs' expert, Dr. Capser, survives Defendant's *Daubert* challenge at this time.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Exclude Expert Opinions of Shawn Capser (Dkt. 106) and Defendant's Motion to Exclude Plaintiffs' Untimely Expert Report (Dkts. 133) are **DENIED**.

**IT IS SO ORDERED**.

**SIGNED this 28th day of March, 2019.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE