IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| STEVEN AND JOANNA CONE, ET AL., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | CASE NO. 4:17-CV-00001-ALM-KPJ |
| VORTENS, INC., SANITARIOS LAMOSA S.A. DE C.V., and PORCELANA CORONA DE MEXICO, SA. DE C.V., | § § § § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Supplement to its Objections and Motion to Strike Declaration of Shawn Capser, Ph.D. (the "Motion") (Dkt. 214). Plaintiffs filed a response on February 6, 2019 (Dkt. 217). Defendants filed a reply on February 13, 2019 (Dkt. 218). As set forth below, the Court finds the Motion (Dkt. 214) is **DENIED**.

### I. BACKGROUND

This action arises from alleged manufacturing and/or marketing defects in certain ceramic Vortens toilet tanks. Plaintiffs' Second Amended Complaint and Class Action (Dkt. 74) is the operative complaint herein.

### II. LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. While the district court must act as a gatekeeper to exclude all unreliable expert testimony, "the rejection of expert testimony is the exception rather than the rule." FED. R. EVID. 702 advisory committee's notes (2000) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, (1999)). Expert testimony is admissible only if the

proponent demonstrates that: (1) the expert is qualified; (2) the evidence is relevant to the case; and (3) the evidence is reliable. *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988-89 (5th Cir. 1997).

In the Motion, Defendant challenges the Declaration of Shawn Capser, Ph.D., SSMBB (the "Declaration") (Dkt. 214-2). To be reliable, and therefore admissible under Rule 702 of the Federal Rules of Evidence, expert testimony as to a scientific, technical, or other specialized area must: (1) assist the trier of fact to understand the evidence or to determine a fact in issue; (2) be based upon sufficient facts or data; (3) be the product of reliable principles and methods; and (4) have reliably applied the principles and methods to the facts. FED. R. EVID. 702. In evaluating the scientific validity or reliability of expert testimony, the Court in *Daubert* noted some non-exclusive factors for the district court to consider: (1) whether the theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the method used; (4) the existence and maintenance of standards and controls in the methodology; and (5) whether the theory or method has been generally accepted by the scientific community. *Daubert*, 509 U.S. at 593-94. "But, as the Court stated in *Daubert*, the test of reliability is "'flexible,' and the *Daubert* factors neither necessarily nor exclusively apply to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination*." Kumho Tire*, 526 U.S. at 151.

In determining the admissibility of expert testimony, the trial court is not to consider the conclusions generated by an expert witness, but only the principles and methodology used to reach those conclusions. *See Daubert*, 509 U.S. at 595. "When the principles and methodology are sufficient to allow the expert opinion to be presented to the jury, the party challenging the testimony must resort to 'vigorous cross-examination, presentation of contrary evidence, and

careful instruction on the burden of proof' as the means to attack 'shaky but admissible evidence.'" *Burton v. Wyeth-Ayerst Labs. Div. of American Home Prods. Corp.*, 513 F. Supp. 2d 708, 710 (N.D. Tex. 2007) (citing *Daubert,* 509 U.S. at 596).

### III. ANALYSIS

Dr. Capser, Plaintiffs' designated statistics expert, has provided preliminary reports and the Declaration at issue. *See* Dkt. 106. Plaintiffs designated Dr. Capser on January 16, 2018; Dr. Capser was deposed on March 5, 2018. *See* Dkt. 133 at 1. After Plaintiffs submitted the Declaration, Dr. Capser was deposed again on January 10, 2019. *See* Dkt. 214 at 1. Defendant seeks to exclude the Declaration in its entirety due to "inconsistencies and errors." *See* Dkt. 214 at 2. Plaintiffs respond that the issues identified by Defendant go to the weight, not the admissibility of modeling examples. *See* Dkt. 217 at 3. Plaintiffs further argue Dr. Capser's opinions meet the *Daubert* standard for class certification consideration and that none of the objections warrant striking of the Declaration. *See id*.

"Issues arising out of the use of expert witnesses at the class certification stage have beguiled the federal courts[.] . . . The problem, if problem it be, is one of a mismatch between evidence and timing, with ultimate merits evidence being weighed before the conclusion of the discovery phase of the lawsuit." 3 NEWBERG ON CLASS ACTIONS § 7:24 (5th ed.). In *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), the Supreme Court made clear that courts could—and indeed should—look at the merits of certification. *Id*. at 350-51. (Concluding that the rigorous analysis required to determine the certification question will necessarily "entail some overlap with the merits of the plaintiff's underlying claim."). Following *Wal-Mart,* the trend has been that courts will apply some form of *Daubert* analysis at class certification. The split is whether the approach

should be limited or whether a full and conclusive *Daubert* analysis, including an assessment of the expert's persuasiveness, is required. 3 NEWBERG ON CLASS ACTIONS § 7:24.

While the Fifth Circuit has not explicitly decided this question since *Wal-Mart*, the courts in this circuit appear to follow a limited *Daubert* approach. *See, e.g.*, *Steward v. Janek*, 315 F.R.D. 472, 478 (W.D. Tex. 2016); *Ancar v. Murphy Oil, U.S.A, Inc.*, 2007 WL 3270763, at *1 (E.D. La. 2007) ("A full review under *Daubert* is not suitable to class certification proceedings."); *Turner v. Murphy Oil USA, Inc.*, 2006 WL 91364 (E.D. La. 2006) (concluding that only a limited *Daubert* review was appropriate at the class certification stage). As the Court explained in *Turner*:

> [A] district court may not weigh conflicting expert evidence or engage in a statistical dueling of experts. The question for the district court at the class certification stage is whether the plaintiffs' expert evidence is sufficient to demonstrate common questions of fact warranting certification of the proposed class, not whether the evidence will ultimately be persuasive.

*Turner v. Murphy Oil*, 2006 WL 91364, at *3 (citing *In re Visa Check/Master Money Antitrust Litig.*, 280 F.3d 124, 135 (2d Cir. 2001) (internal quotation marks omitted)). In other words, with respect to expert evidence at the class certification stage, "the Federal Rules of Evidence apply, albeit in a relaxed fashion." *Anderson Living Trust v. WPX Energy Prod., LLC*, 306 F.R.D. 312, 377 (D.N.M.), *adhered to on reconsideration*, 312 F.R.D. 620 (D.N.M. 2015).

Under this "limited" or "relaxed" *Daubert* analysis, a court is required to review the expert's opinion to ensure that it contains no flaws that would render it inadmissible as a matter of law. *Ancar v. Murphy Oil*, 2007 WL 3270763, at *2 (internal citations omitted). Thus, the Court's review should be limited to the opinion's reliability and relevance to the requirements of class certification. *Id.* Furthermore, the Court does not determine at this time whether the expert opinion would pass muster at the time of trial on issues like causation; nor does the Court's ruling at the time of class certification preclude a full *Daubert* analysis at the appropriate time. *Id.*

The Court finds that Dr. Capser's testimony meets these requirements. As the Court has previously ruled, Dr. Capser is qualified in the field of statistical and reliability methods, and he is a certified Master Black Belt in *Six Sigma*. *See* Dkt. 227 at 6. His substantial knowledge, skill, experience, training, and education in these areas will assist the trier of fact. In addition, Dr. Capser's methodology includes generally-accepted methods and principles within the field of statistics, including the application of *Six Sigma* metrics and statistics. *See, e.g.*, Dkt. 146-1; 146-4; 146-5; 146-8. Therefore, the Court finds the testimony is admissible at this stage of the litigation. Like other of Defendant's challenges to Dr. Capser's opinions, the four identified issues go primarily to the weight of his opinions. Defendant must resort to "vigorous cross-examination" and "presentation of contrary evidence" as the means to attack admissible evidence it considers to be "shaky." *Burton v. Wyeth-Ayerst Labs.*, 513 F. Supp. 2d at 710 (citing *Daubert*, 509 U.S. at 596) (internal quotation marks omitted).

The Court will, however, briefly discuss each of the highlighted issues.

### A. Claim rate examples to determine years of defects

Defendant challenges Paragraph 15 of the Declaration regarding claim rate examples and which tank model was reviewed. *See* Dkt. 214 at 2-3. Plaintiffs argue the issue is moot as they agreed clarification was warranted, and the information was explained through a second deposition of Dr. Capser. *See* Dkt. 217 at 5. The Court finds the challenged material is admissible.

### B. Number of model #3436 sold

Defendant complains that Dr. Capser's presumption that 1,360,779 units were sold is incorrect. *See* Dkt. 214 at 4. This is, again, a challenge directed not at methodology or a principle employed in the Declaration, but to a factual presumption for demonstration of a calculation. Plaintiffs agree that Dr. Capser's claim rate example "needs more data prior to becoming a final

5

opinion." *See* Dkt. 217 at 4-5. It is not suitable to consider the Declaration, as presented in a non-final form, as if the assumptions regarding data figures are final. The figure Dr. Capser cited is not presented as proof of a numerosity requirement for class certification, but as an assumption to demonstrate the methodology of calculating claim rate failure based, in part, on number of units sold. The Court finds the challenged material is admissible. If Plaintiffs do not update the data, Defendant's objection may be relevant at a later stage of the litigation, as it goes to the weight of the opinion.

### C. Basis of claim calculations

Defendant challenges the basis of the data relied upon for calculations, noting specifically that Dr. Capser did not filter out claims involved in a "goodwill gesture" where no problem had manifested with the tank. *See* Dkt. 214 at 5. As previously discussed, this issue goes to the weight rather than the admissibility of the opinion.

Further, Defendant's challenge is that Dr. Capser did not consider causation for the tank fracture or basis for claims. *See id*. Plaintiffs contend Dr. Capser's Declaration intentionally does not address causation, as causation is addressed separately by Dr. John Mecholsky and Mr. David Ahearn. *See* Dkt. 217 at 6–7. Dr. Capser testified, rather, that filters can be applied to claim rate modeling results to account for causation metrics. *See* Dkt. 217-1 at 4–5, 12.

Defendant's challenge does not contravene this explanation; it merely focuses on the specific data rather than a failure in the principles offered by Dr. Capser. The Court finds the challenged material is admissible.

### D. Statistical process control

Defendant argues Dr. Capser performed process control work that was not described in the Declaration, failed to properly identify the data he relied upon, and did not adequately explain so-

6

called "minor assumptions" he made. *See* Dkt. 214 at 6. Plaintiffs contend that Dr. Capser's use of "minor assumptions" was a general statement regarding statistics or probability theory—not as to numbers or variable ranges—and would be understood as such in this context *See* Dkt. 217 at 8. Plaintiffs also note that Dr. Capser expressly stated he used the ongoing production of data to demonstrate the process explained in his Declaration. Challenges to the data itself and variable values concern the probativeness of Dr. Capser's Declaration and does not concern the methodology employed. The Court highlights that Plaintiffs recognize the Declaration is focused on examples of how statistical process control is utilized rather than a final statement of the facts, which may be used at trial. The Court finds the challenged material is admissible.

## IV. **CONCLUSION**

For the foregoing reasons, the Court finds that the Declaration of Plaintiffs' expert, Dr. Capser, survives Defendant's challenge.

**IT IS THEREFORE ORDERED** that Defendant's Supplement to its Objections and Motion to Strike Declaration of Shawn Capser, Ph.D. (Dkt. 214) is **DENIED**.

**IT IS SO ORDERED.**

**SIGNED this 17th day of September, 2019.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE