IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| STEVEN AND JOANNA CONE, | § | |
| MARK AND AMBER FESSLER, | § | |
| ANDREW HOCKER, MATTHEW | § | |
| CARRERAS, AARON AND STACEY | § | CIVIL ACTION NO. 4:17-CV-00001 |
| STONE and DANIEL AND SHARON | § | |
| SOUSA on Behalf of Themselves and | § | Hon. Judge Amos Mazzant |
| Those Similarly Situated, | § | |
| _Plaintiffs,_ | § | |
| | § | |
| vs. | § | |
| | § | |
| PORCELANA CORONA DE MEXICO, S.A. | § | |
| DE C.V. f/k/a SANITARIOS LAMOSA S.A. | § | |
| DE C.V. a/k/a Vortens, | § | |
| _Defendant_**.** | § | |

**DEFENDANT PORCELANA CORONA DE MEXICO, S.A. de C.V.'S
OBJECTIONS AND RESPONSE TO PLAINTIFFS' MOTION FOR APPROVAL
OF AWARD OF ATTORNEYS' FEES AND REQUEST FOR
<u>REIMBURSEMENT OF LITIGATION EXPENSES</u>**

## <u>TABLE OF CONTENTS</u>

I.    Hours reasonably spent for Plaintiffs' successful clients. ................................................. 2

    A.    The 2011 Class.................................................................................................. 3

    B.    The Texas Class. ............................................................................................... 6

II.   Plaintiffs cannot establish valid grounds for enhancement.................................................. 8

    A.    Novelty and difficulty; skill required; experience, reputation and ability; and fixed or contingent fee. .................................................................................. 13

    B.    Time limitations; nature and length of professional relationship with client. ...... 16

    C.    Amount involved and results obtained. .......................................................... 17

    D.    Undesirability of action.................................................................................. 20

    E.    Similar cases. ................................................................................................. 20

III.  The lodestar base should be reduced. .............................................................................. 24

IV.   Conclusion ...................................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Allen Hall, et al. v. Rent-A-Center, Inc., et al.,* 4:16-cv-00978-ALM-CMC (E.D. Tex. 2019).... 25

*Bentson v. Chyma*, No. 4:15-cv-00523 ALM-CAN, 2017 WL 7513317 (E.D. Tex. Dec. 11, 2017) .................................................................................................................................................... 10

*Blum v. Stenson*, 465 U.S. 886, 898 (1984) ............................................................ 9, 10, 13, 15

*City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) .................................................. 1, 9, 13, 16

*City of San Antonio, Texas v. Hotels.com, L.P.*, 2017 WL 1382553, *15 (W.D. Tex. 2017) ...... 21

*Combs v. City of Huntington*, 829 F3d 388 (5th Cir. 2016)........................................................ 19

*Delaware Valley I, supra,* 478 U.S., at 565, 106 S.Ct., at 3098 .................................................. 13

*Di Giacomo v. Plains All American Pipeline*, 2001 WL 34633373, *4, 9, 13 (S.D. Tex. 2001) . 23

*Feld Motor Sports, Inc. v. Traxxas, LP*, No. 4:14-CV-543, 2016 WL 2758183, at *15-*16 (E.D. Tex. May 12, 2016).............................................................................................................. 25

*Forbush v. J.C. Penney Co.*, 98 F.3d 817 (5th Cir. 1996) ......................................................... 23

*Garza v. Sporting Goods Properties, Inc.*, 1996 WL 56247, *17, 24, 26, 29, 32-34 (W.D. Tex. 1996) ..................................................................................................................................... 23

*Graves v. Barnes*, 700 F.2d 220, 224 (5th Cir. 1983) ................................................................ 16

*Gurule v. Land Guardian, Inc.*, 912 F.3d 252 (5th Cir. 2018) .................................................. 18

*Haberman v. PNC Mortg. Co.*, 915 F. Supp. 2d 800, 806-809 (E.D. Tex. 2013) ....................... 10

*Heidtman v. Cty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999) (citations omitted) ......... 14, 20

*Hensley v. Eckerhart*, 103 S. Ct. 1933, 1939 (1983) .................................................................... 3

*Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) .......................................................... 1, 3, 18, 19

*Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*, 2018 WL 1602460 at *2 (E.D. Tex. Apr. 3, 2018)................................................................................................................... 24

*In re Dell Inc.*, 2010 WL 2371834, *12 (W.D. Tex. 2010) .............................................. 12, 21, 22

*In re Enron Corp. Securities, Derivative & "ERISA" Litig.*, 586 F.Supp.2d 732, 740, 741, 778, 796 (S.D. Tex. 2008)............................................................................................................... 23

*In re Enron Corp. Securities, Derivative & ERISA Litig.*, 586 F.Supp.2d 732, 752 (S.D. Tex. 2008) ...................................................................................................................................... 12

*Jason D.W. by Douglas W. v. Houston Indep. Sch. Dist.*, 158 F.3d 205, 209 (5th Cir. 1998) ..... 13

*Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974)................................... passim

*Klein et al v. O'Neal, Inc.*, 705 F.Supp.2d 632, 680 (N.D. Tex. 2010) ........................................ 20

*Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir. 1995) ............................ 17

*Marek v. Chesny*, 473 U.S. 1, 11, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985)...................................... 19

*Merritt Hawkins & Assocs., L.L.C. v. Gresham*, 861 F.3d 143, 156 (5th Cir. 2017) ..................... 2

*Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1048 (5th Cir. 1998).......................................... 17, 24

*Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 298 (5th Cir. 2007) .................................. 2

*Neal Techs., Inc. v. Unique Motorsports, Inc.*, No. 4:15-CV-00385, 2018 WL 3630128, at *7-*8 (E.D. Tex. July 31, 2018)......................................................................................................... 25

*NSEW Holdings LLC v. Wells Fargo Bank, N.A.*, 2017 WL 1030313, at *7 (E.D. Tex. 2017) . 2, 3

*OneBeacon Ins. Co. v. T. Wade Welch & Assoc.*, 2015 WL 5021954, *13 (S.D. Tex. 2015)...... 21

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) (*Delaware Valley I*)................................................................................................................... 9

*Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010) ................................................ passim

*Pittman v. McClain's R.V., Inc.*, No. 4:12CV542, 2013 WL 6804658, at *4 (E.D. Tex. Dec. 23, 2013) ............................................................................................................................... 25

*Recursion Software, Inc. v. Double-Take Software, Inc.*, No. 4:10-CV-403, 2013 WL 12403528, at *7 (E.D. Tex. Jan. 3, 2013) ............................................................................ 25

*Romaguera v. Gegenheimer* ...................................................................................... 21

*Sec. & Exch. Comm'n v. Sethi Petroleum LLC*, No. 4:15-cv-00338, 2017 WL 262071, at *2 (E.D. Tex. Jan. 19, 2017) ................................................................................................. 10

*Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 971 (E.D. Tex. 2000) (internal quotations omitted) ........................................................................... 9, 14, 15, 17

*Stratton v. XTO Energy Inc.*, 2012 WL 407385, *7 (Tex.App.—Fort Worth 2012, no pet.) ....... 12

*Strong v. BellSouth Telecommunications, Inc.*, 137 F.3d 844, 851 (5th Cir. 1998) ................... 17

*Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310-14 (Tex. 2006) ................................. 2

*Transamerican Natural Gas Corp. v. Zapata Partnership, Ltd. (In re Fender)*, 12 F.3d 480, 487 (5th Cir.1994) .......................................................................................................... 9

*Union Asset Management Holding, A.G. v. Dell*, 669 F3d 632, 644-45 (5th Cir. 2012) ............. 24

*Vaughn v. American Honda Motor Co.*, 627 F.Supp.2d 738, (E.D. Tex. 2007) .......................... 22

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n. 6 (9th Cir.2002) ........................................ 12

*Von Clark v. Butler*, 916 F.2d 255, 259 (5th Cir. 1990) ............................................................... 3

*Walker v. City of Mesquite*, 313 F.3d 246 (5th Cir. 2002) ........................................................... 4

*Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993) ................................................................... 3

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| STEVEN AND JOANNA CONE, | § | |
| MARK AND AMBER FESSLER, | § | |
| ANDREW HOCKER, MATTHEW | § | |
| CARRERAS, AARON AND STACEY | § | CIVIL ACTION NO. 4:17-CV-00001 |
| STONE and DANIEL AND SHARON | § | |
| SOUSA on Behalf of Themselves and | § | Hon. Judge Amos Mazzant |
| Those Similarly Situated, | § | |
| *Plaintiffs,* | § | |
| | § | |
| vs. | § | |
| | § | |
| PORCELANA CORONA DE MEXICO, S.A. | § | |
| DE C.V. f/k/a SANITARIOS LAMOSA S.A. | § | |
| DE C.V. a/k/a Vortens, | § | |
| *Defendant*. | § | |

**DEFENDANT PORCELANA CORONA DE MEXICO, S.A. DE C.V.'S
OBJECTIONS AND RESPONSE TO PLAINTIFFS' MOTION
FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

DEFENDANT PORCELANA CORONA DE MEXICO, S.A. de C.V. ("Porcelana")[1] does

not dispute that Plaintiffs' counsel are entitled to reasonable attorney fees.  Porcelana agrees with

use of the lodestar method[2] and does not dispute Plaintiffs' counsels' rates (despite the fact such

rates are extremely high).  Porcelana disputes: (1) the amount of hours reasonably expended on

the settled claims, and (2) the exorbitant and unsupported multiplier Plaintiffs' counsel arbitrarily

---

[1] Porcelana is the entity formerly known as Sanitarios Lamosa S.A. de C.V., which did business as Vortens™.  The subject tanks were manufactured by Sanitarios Lamosa, S.A. de C.V.

[2] The parties agree that the "lodestar" method should be used to determine the amount of fees under the settlement. "The 'lodestar' figure has, as its name suggests, become the guiding light of the" Supreme Court's "fee-shifting jurisprudence." *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).  The Court has "established a strong presumption' that the lodestar represents the "reasonable" fee." *Id.* (quoted citation omitted).  As the Court more recently explained, the lodestar approach serves several functions.  First, "the lodestar method provides an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010).  "Second, the lodestar method is easily administrable" in this context.  *Id.*  Third, "the lodestar calculation is 'objective,' . . ., and thus cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results." *Id.* at 552, quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

applies.  The lodestar should also be reduced, as well as Plaintiffs' expenses.  For the Court's convenience, Porcelana refers to the first settling class as the "2011 Class" and the second settling class as the "Texas Class," respectively.

## I.   Hours reasonably spent for Plaintiffs' successful clients.

Plaintiffs' counsel seek recovery of all of their time recorded and expenses incurred working on the case, when only a small fraction of the putative class members obtained successful results.  As the Supreme Court has explained, the lodestar calculation is meant to approximate the hourly fee that the prevailing attorney would have received from a paying client for comparable work.  *Perdue*, 559 U.S. at 551.  This means that the hours used in the lodestar calculation must be limited to the hours worked for successful class members, and not every putative class member.

In a case involving multiple claims, at least one of which supports a fee award and at least one of which does not, the party seeking attorneys' fees must offer evidence segregating the hours worked between these claims.  *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 298 (5th Cir. 2007); *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310-14 (Tex. 2006).  A party requesting attorney fees carries the burden of proof and the duty to segregate fees.  *Merritt Hawkins & Assocs., L.L.C. v. Gresham*, 861 F.3d 143, 156 (5th Cir. 2017).  Claims may arise from intertwined facts but nonetheless be capable of segregation because not all of the plaintiff's claims require the same research, discovery, proof, or legal expertise.  *Chapa*, 212 S.W.3d at 313.

If a party fails to segregate its fees, unsegregated fees for the entire case are some evidence of what the segregated amount should be.  *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 298 (5th Cir. 2007).  The district court may award a percentage of fees rather than denying recovery of fees completely.  *Id*.  To determine the amount of reasonable attorney's fees, the Court must review the records and exclude all time that is excessive, duplicative, or inadequately documented. *NSEW Holdings LLC v. Wells Fargo Bank, N.A.*, 2017 WL 1030313, at *7 (E.D. Tex. 2017), citing

*Hensley v. Eckerhart*, 103 S. Ct. 1933, 1939 (1983); *Von Clark v. Butler*, 916 F.2d 255, 259 (5th Cir. 1990).  The hours that survive this vetting process are those reasonably expended on the litigation.  *NSEW Holdings LLC,* 2017 WL 1030313 at *7, citing *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).  In determining attorney's fees for an action in which some claims prevail and others do not, "[t]here is no precise rule or formula for making these determinations.  The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.  The court necessarily has discretion in making this equitable judgment."  *Hensley v. Eckerhart,* 461 U.S. 424, 436-37 (1983).

It is incumbent on plaintiffs' counsel to segregate the hours worked for the settlement classes, and use only those segregated hours to calculate the lodestar.  Yet Plaintiffs have not followed this fundamental requirement of the lodestar method.

### A.  The 2011 Class.

Porcelana instituted a replacement program in 2016 which provided replacement toilet tanks to homeowners owning model #3412 and #3464 tanks made from March through July of 2011 at both of its manufacturing plants.[3]  In 2017, Porcelana expanded the scope of the replacement program to include all model #3412 and #3464 tanks manufactured during any month and year, at both of its manufacturing plants.[4]  Therefore, reaching a settlement for the two classes was neither unexpected nor risky.

Importantly, the vast majority of consumer product liability class actions involve allegations of design defect, not manufacturing defect.  In those design defect cases, class certification for a product defect is an all-or-nothing proposition:  either all of the products were

---

[3] [Doc. 23-11, ¶¶ 6, 7], filed in 4:19-cv-00248.  Sanitarios Lamosa, S.A. de C.V. manufactured the subject tanks at two manufacturing plants, which are named for the cities where they are located in Mexico:  Monterrey and Benito Juarez. *See id*. at ¶ 3.
[4] [Doc. 23-11, ¶ 8].

designed defectively, or they were not.  In a manufacturing defect case, the manufacturing defect has a specific beginning and a specific end date, and is necessarily limited in scope.

Plaintiffs initially pursued class certification for putative class members alleging manufacturing defect claims for a wide range of tank models made over a nine-year period:[5]

82.   Plaintiffs anticipate defining this Class as:

*Any and all consumers of toilet tank models #3464, #3412, #3404, #3425, #3408 and #3571 manufactured, produced, designed, marketed, or distributed by the named Defendants between 2004-2012.*

The parties first reached an agreement to settle with claimants who owned 2011-manufactured model #3412 and #3464 tanks.  Thus, only putative class members owning two tank models made in one year succeeded in having their claims certified.  Most of the work Plaintiffs' attorneys did prior to the first settlement was for the benefit of **all putative class members' claims** regarding **all models** of toilet tanks made during **all nine years** of manufacture.  The bulk of Plaintiffs' work and expenses was not devoted to the settlement class being certified.

While Plaintiffs have attached their billing records, such records clearly indicate that much of Plaintiffs' attorneys' work:  (1) does **not** pertain to settled class members only, (2) is excessive and unnecessary, and (3) is not commensurate with the value of the settlement to the class.  Under *Walker v. City of Mesquite*[6], Plaintiffs have not met their burden of proving the reasonableness and necessity of their requested fees.

Plaintiffs' counsel's fee award must reflect a percentage of the work that accurately reflects the time that benefited the successful class members.[7]  For the 2011 Class, this means that only

---

[5] Plaintiffs' First Amended Complaint and Class Action,¶ 82 [Doc. 4], filed in 4:17-cv-00001.
[6] 313 F.3d 246 (5th Cir. 2002). Plaintiffs have the burden of showing the reasonableness of the hours they bill and, accordingly, must prove that they exercised billing judgment.  They are not entitled to fees for issues on which they did not prevail. *Id.* at 251.
[7] *Id.*

6.06% of Plaintiffs' attorneys' reasonable and necessary work, billed at a reasonable hourly rate, for work during October 2016 – January 17, 2018 should be considered as benefiting the 2011 class.  During this time, Plaintiffs' work encompassed tank model #3404, #3408, #3412, #3425, #3436, #3464, and #3571, made from 2004 to 2012.  This includes the First Amended Complaint filed in March of 2017, which identified the scope as "Any and all consumers of toilet tank model #3464, #3412, #3404, #3425, #3408 and #3571 manufactured, produced, designed, marketed, or distributed between 2004-2012."  There were 33 potential individual groups of class plaintiffs, counting each model in each year of manufacture (excluding the one non-existent tank model Plaintiffs included)).[8]  The 2011 Class represents 6.06% of this work (dividing the 2 certified tank models by 33 possible model and year combinations of groups of class plaintiffs).[9]

A reasonable fee award is 6.25% of Plaintiffs' attorneys' reasonable and necessary time, billed at a reasonable hourly rate, for work from January 18, 2018 (Second Amended Complaint) – November 19, 2018 (Second Motion for Class Certification) pertaining to putative class members owning tank model #3404, #3412, #3425, #3436, and #3464, made from 2004-2012.[10]  Plaintiffs abandoned model #3408 and #3571, so there were 32 potential groups of class plaintiffs, counting each model in each year of manufacture.  The 2011 Class represents 6.25% of this work (dividing 2 by 32 (there was no tank model #3571, so that model is not counted)).[11]

A reasonable fee award is 11.76% of Plaintiffs' attorneys' reasonable and necessary work, billed at a reasonable hourly rate, from November 19, 2018 – June 15, 2019 pertaining to the remaining putative class members owning model #3464, #3412, #3425, and #3436 manufactured

---

[8] *See* [Doc. 23-2], filed in 4:19-cv-00248.
[9] *See* [Doc. 23-1, Doc. 23-3 ¶11], filed in 4:19-cv-00248.
[10] While Plaintiffs omitted claims for model #3436, they reasserted those claims in their Second Amended Complaints and Class Action, 4:17-cv-00001 [Doc. 74].
[11] [Doc. 23-1, 23-3 ¶ 11], filed in 4:19-cv-00248.

from 2007-2012, and excluding the settlement class of #3464 and #3412 made in 2011.  Billing entries pertaining to these other (non-settled) putative class members include five years for #3412 (excluding 2011), one year for #3425, six years for #3436, and five years for #3464 (excluding 2011).  There were 17 potential classes; thus, if billing for all putative class members, including the ones in the certified class, the amount attributable to the 2011 Class is 11.76% (dividing 2 by 17).[12]  Defendant requests the Court apply the same reductions to Plaintiffs' claimed expenses for the 2011 Class, as they suffer the same failure to segregate as Plaintiffs' billing statements.

**B.  The Texas Class.**

Porcelana objects to Plaintiffs' request for an award of its lodestar calculation for the Texas Class because the class certified represents a fraction of the putative class members for which Plaintiffs' counsel sought certification.  Plaintiffs' Second Amended Complaint sought recovery for four models of toilet tanks made over a period of six years at two manufacturing plants:

> *All Texas owners of a Vortens toilet tank model #3464, #3412, #3425, or #3436 with a manufacturing date 2007-2012 that experienced property damage after spontaneous tank fracture.*

Plaintiffs further seek certification of a Rule 23(b)(2) class for an Equitable Relief Class seeking warranty protections for latent defects:

> *All owners of a Vortens toilet tank model #3464, #3412, #3425, or #3436 with a manufacturing date 2007-2012.*

The Texas Class, however, is quite limited:  Texas owners of Vortens™ model #3412 and #3464 tanks manufactured at the Benito Juarez plant from 2007-2010.  Porcelana did not export Vortens™ model #3412 tanks to Texas until 2011, so the vast majority of the tanks identified in

---

[12] *Id.*

this class will be Vortens™ model #3464 tanks.[13]  The number of Vortens™ tank model #3464 manufactured from 2007-2010 at the Benito Juarez plant and exported to Texas totals 73,954.[14]

The remaining **unsuccessful** putative class members owned Vortens™ tank models #3436 and #3425 manufactured from 2007-2012 at both the Monterrey and Benito Juarez plants; tank models #3412 and #3464 manufactured from 2007-2012 at the Monterrey plant; and tank models #3412 and #3464 manufactured in 2012 at the Benito Juarez plant.  A chart of these tank models, years of production, and production numbers for Plaintiffs' claims is attached as an exhibit to the Declaration of Wilson Martinez.[15]

There were a total of 2,398,859 potential class tanks (Vortens™ tank models #3412, #3425, #3436, and #3464) manufactured from 2007-2012 at the Monterrey and Benito Juarez manufacturing plants, for which Plaintiffs sought certification.  The Texas Class encompasses 3.08 percent of the tanks for which class certification was sought in Plaintiffs' Second Motion for Class Certification.  It is not possible to simply calculate the percentage of successful tank models and years of manufacture as Porcelana did for Plaintiffs' 2011 Class, because the 2011 Class encompassed two tank models manufactured at both manufacturing plants during one year, with no geographic limitation for ownership.  The Texas Class is quite limited, in comparison:  Texas owners of Vortens™ tank models #3412 and #3464 manufactured at the Benito Juarez plant during 2007-2010 (less than 74,000 tanks).

Plaintiffs' counsel seek recovery of all of their time recorded and expenses incurred working for putative class members owning four tank models manufactured over six years with no geographic limitation for distribution, when only a small fraction of those putative class members

---

[13] *See* [Doc. 266-1, 267], filed in 4:17-cv-00001. It is possible that a stray Vortens™ model #3412 tank may have made its way to Texas, but they were not exported to Texas until 2011.
[14] *Id*.
[15] *See* [Doc. 267], filed in 4:17-cv-00001.

were successful.  Any fee award should be tailored to the time and expense that truly supports the Texas Class members, and should exclude the time and expense spent chasing certification for unsuccessful putative class members.  Because Plaintiffs' success with the Texas Class was so limited in comparison to the scope of class certification they pursued, the Court should limit any award to a corresponding calculation of 3.08 percent of the fee award requested.

## II.     Plaintiffs cannot establish valid grounds for enhancement.

Plaintiffs arbitrarily apply a multiplier of 2.9 to the base lodestar, which would result in 290% total fee payment that is 190% higher than the lodestar.  Plaintiffs request a base lodestar of 4,388,405.50 with a 2.9 multiplier, which totals $12,726,376.  This would result in an average hourly rate for attorney time of $1,783.80, although the value of the benefits to the classes pales in comparison.  The 2011 Class members have been paid $19,494.69 and are scheduled to receive another $66,313.26 if all claims in the second round of processed claims are approved.  The 2011 Class will also receive the value of $35/tank for each replacement tank voucher provided to claimants, which totals $4,585[16] assuming the second round of claim review tank replacement requests are approved and redeemed.  Adding proposed adjustments that will likely be approved to the first round of claim approvals (constituting another $1,820.96 in payments), the grand total of the benefits to the 2011 Class as of mid-February, 2020 was $92,213.91.[17]

While the Texas Class administration is still in its early stages, Porcelana's anticipated exposure of less than $75,000 is a high projection. As of February 21, 2020 (the most recent Texas Class claim data provided to the parties), only four claims have been made.[18]

---

[16] Again, assuming the second round of processed claims are approved, AND those vouchers are redeemed. [Doc. 266-2], filed in 4:17-cv-00001, ¶ 15.
[17] *Id*.
[18] *See* Exhibit A, Epiq's most recent claim report, dated February 25, 2020.

Plaintiffs have not even attempted to demonstrate that this is a unique situation where any enhancement should be awarded at all, much less the grossly inflated 2.9 they seek.[19]  They claim they are entitled to this multiplier given the "complexities of this manufacturing defect case stretching over four years and the uniqueness of the partial certification and ultimate negotiated benefit."[20]  They offer no proof of such "complexities" or proof that four years is extensive (the class representatives for the Texas Class have only been part of this lawsuit since January of 2018). Further, they argued that a partial settlement and certification is quite common when requesting the certification of only the 2011 Class.[21]

Plaintiffs' cited cases do not support their claim that this is one of the unusual situations where a multiplier of 2.9 should be applied.[22]  The Supreme Court established there is a "strong presumption" that the lodestar represents the "reasonable" fee.  *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) (*Delaware Valley I*); *see also Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 968 (E.D. Tex. 2000) ("'[T]he lodestar may be adjusted according to a *Johnson* factor only if that factor is not already taken into account by the lodestar.'") (citing *Transamerican Natural Gas Corp. v. Zapata Partnership, Ltd. (In re Fender)*, 12 F.3d 480, 487 (5th Cir.1994).  The burden is on the fee applicant who seeks more than that to show "such an adjustment is *necessary* to the determination of a reasonable fee." *Blum v. Stenson*, 465 U.S. 886, 898 (1984) (emphasis added).  When an enhancement is awarded on an impressionistic basis, a major purpose of the lodestar method—providing an objective and reviewable basis for fees—is undermined.  *City of Burlington v. Dague*, 505 U.S. 557, 566 (1992).

---

[19] *See, e.g. Perdue v. Kenny A.*, 559 U.S. 542, 557-60 (2010) (enhancement reversed by the Supreme Court); *Blum v. Stenson*, 465 U.S. 886, 898, 901-02 (1984) (enhancement reversed by the Supreme Court).
[20] Plaintiffs' motion, p. 10.
[21] *See, e.g.* Motion to Sever and Request for Hearing on Preliminary Approval of Class Action Settlement [Doc. 220], filed in 4:17-cv-00001.
[22] *See* section III(G), *infra*.

This Court has historically refused to enhance a base lodestar where such is unwarranted.  *Sec. & Exch. Comm'n v. Sethi Petroleum LLC*, No. 4:15-cv-00338, 2017 WL 262071, at *2 (E.D. Tex. Jan. 19, 2017) (noting enhancement of lodestar not sought, but also deemed not appropriate); *Bentson v. Chyma*, No. 4:15-cv-00523 ALM-CAN, 2017 WL 7513317 (E.D. Tex. Dec. 11, 2017), report and recommendation adopted, No. 4:15-cv-523 ALM-CAN, 2018 WL 780587, FN 8 (E.D. Tex. Feb. 8, 2018) ("After considering the relevant *Johnson* factors, the undersigned does not find that the lodestar amount should be changed in this case."); *Haberman v. PNC Mortg. Co.*, 915 F. Supp. 2d 800, 806-809 (E.D. Tex. 2013) ("Amount involved and results obtained did not warrant adjustment of lodestar.").

The Supreme Court held in *Perdue v. Kenny A*. that there are a few "rare" and "exceptional" circumstances where superior attorney performance is not adequately taken into account in the lodestar calculation; however it requires "specific evidence that the lodestar fee would not have been 'adequate to attract competent counsel.'"  559 U.S. 542, 554 (2010), citing *Blum v. Stenson*, 465 U.S. 886, 897 (1984).  An enhancement may be appropriate: (1) where the method used to determine the hourly rate employed in the lodestar calculation does not adequately measure the attorney's true market value; (2) if the attorney's performance includes an extraordinary outlay of expenses and the litigation is exceptionally protracted (in such case, enhancement must be reasonable, such as applying a standard rate of interest to the qualifying outlays of expenses); or (3) where an attorney's performance involves exceptional delay in the payment of fees (this is usually remedied by basing the award on current rates; however, if there is unanticipated delay in a case, particularly if caused by the defense, then enhancement should be similar to that for expenses under (2).  *Perdue*, 559 U.S. at 555-56.  The Supreme Court reversed the enhancement in *Perdue* because the district court did not: (1) sufficiently link the enhancement to proof in the

record that the delay in receiving attorney fees was outside the normal expected range; (2) calculate the amount of the enhancement attributable to extraordinary outlays for expenses; or (3) employ a methodology which would permit meaningful appellate review in comparing counsel's performance with the performance of counsel in unnamed prior cases.

Likewise, Plaintiffs' attorneys have not presented such evidence here.  Plaintiffs' attorneys request $695 per hour for Scott Carpenter and $675 per hour for Rebecca Bell Stanton, and Porcelana does not object to such rates despite the fact they are not affordable to an average plaintiff (and are not routinely charged to nor paid by counsel's other clients).  Plaintiffs' attorneys cannot credibly claim:  (1) the method used to determine the hourly rate employed in the lodestar calculation does not adequately measure their true market value; (2) their performance includes an extraordinary outlay of expenses and the litigation was exceptionally protracted (even if it was, applying a standard rate of interest to the qualifying outlays of expenses would the appropriate remedy); or (3) their performance involved exceptional delay in the payment of fees (even if it were, their rates are quite high and cannot be said to not be "current.").  *See Perdue*, 559 U.S. at 555-56.  With such high billing rates, Plaintiffs' counsel is more than adequately compensated by the base lodestar. Plaintiffs have not and cannot present evidence that enhancement is appropriate.

Plaintiffs state only two issues remain in dispute regarding the 2011 Class fee application: (1) whether all wholly discrete activities were segregated, and (2) the proposed sliding scale adjustment to every activity not solely beneficial to the settlement class.  In fact, Porcelana objected to Plaintiffs' requested multiplier in their first fee application as it does to Plaintiffs' requested multiplier here.  Porcelana incorporates its briefing regarding why a multiplier should

not be applied in its [Doc. 23][23] and [Doc. 35][24] herein.[25]  Porcelana further objects to many of Plaintiffs' expenses, as they are excessive ($1,000 for three months of storage for unknown items)[26] and not attributable to or for the benefit of either certified class.[27]

The enhancement ranges mentioned by Plaintiffs are likewise meaningless here.  *See In re Enron Corp. Securities, Derivative & ERISA Litig.*, 586 F.Supp.2d 732, 752 (S.D. Tex. 2008) (the average range for enhancements **when applied** is from 1.0-4.0).  They were based on a survey of common fund cases predating the Supreme Court's *Perdue* decision.  *Id.*, citing *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1051 n. 6 (9th Cir.2002).  Fees in such cases are awarded as a percentage of the common settlement fund and thus paid by the class as if they were contingent fees; they do not apply here in any meaningful respect.  *See In re Dell Inc.*, 2010 WL 2371834, *12 (W.D. Tex. 2010).  Moreover, multipliers in securities actions tend to be higher than multipliers in other types of less complex or costly class actions.  *See Stratton v. XTO Energy Inc.*, 2012 WL 407385, *7 (Tex.App.—Fort Worth 2012, no pet.).

Further, Plaintiffs effectively ask for a multiplier of 3.0 (2.9 sounds lower and more reasonable than 3.0 but is very close), which is higher than ¾ of the possible lodestar multipliers in the range cited by Plaintiffs.

The lodestar factors do not support enhancement.

---

[23] Porcelana's Objections and Responses to Plaintiffs' Motion for Approval of Service Awards, Award of Attorneys' Fees and Request for Reimbursement of Litigation Expenses, filed in 4:19-cv-00248.
[24] Porcelana's Responses to Plaintiffs' Supplement to Appendix and Application for Attorneys' Fees and Expenses, filed in 4:19-cv-00248.
[25] The 2011 Class fee application requested $12,000,000.00, which would result in an average hourly rate for attorney time of 1,794.70, although the total value to the 2011 Class is projected to be less than $500,000. [Doc. 266-2], filed in 4:17-cv-00001, ¶ 15.
[26] For example, [Doc. 275-2 at Page ID #13214] filed in 4:17-cv-00001: ESI invoices for $1,000 each, going well into 2020, when the entire case had settled.
[27] [Doc. 27-1, ¶¶ 14-20], filed in 4:19-cv-00248.

**A. Novelty and difficulty; skill required; experience, reputation and ability; and fixed or contingent fee.**

As with many, if not all, of the other *Johnson v. Georgia Highway Express,* [28] factors, the Fifth Circuit and Supreme Court have noted these factors are subsumed within the lodestar amount and should be enhanced only in exceptional circumstances:

> The "lodestar" figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence. We have established a "strong presumption" that the lodestar represents the "reasonable" fee, *Delaware Valley I, supra,* 478 U.S., at 565, 106 S.Ct., at 3098, and have placed upon the fee applicant who seeks more than that the burden of showing that "such an adjustment is *necessary* to the determination of a reasonable fee." *Blum v. Stenson,* 465 U.S. 886, 898, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984) (emphasis added).

*City of Burlington v. Dague*, 505 U.S. 557, 562, 112 S. Ct. 2638, 2641, 120 L. Ed. 2d 449 (1992); *see also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986) ( "'[N]ovelty [and] complexity of the issues,' 'the special skill and experience of counsel,' the 'quality of representation,' and the 'results obtained' from the litigation are presumably fully reflected in the lodestar amount, and thus cannot serve as independent bases for increasing the basic fee award.") (quoting *Blum,* 465 U.S. at 898–900); *Jason D.W. by Douglas W. v. Houston Indep. Sch. Dist.*, 158 F.3d 205, 209 (5th Cir. 1998) ("Many of [the Johnson] factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate, and should not be double-counted.") (citations omitted).

The Fifth Circuit has specifically noted "that enhancement based on 'complexity of the issues' and 'results obtained' is only appropriate in 'rare and exceptional circumstances' and must be supported by both specific evidence in the record and detailed findings by the lower court."

---

[28] 488 F.2d 714 (5th Cir. 1974).

*Heidtman v. Cty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999) (citations omitted).  Novelty and difficulty of the questions are no exception.

Without citing any case law to support their propositions, Plaintiffs focus on the facts that: 1) this breach of warranty case involves allegations of a manufacturing defect; and 2) Porcelana took every opportunity to contest the merits of Plaintiffs' claims and assert all available defenses. The latter is to be expected.  The former is not as novel as Plaintiffs suggest.

As this Court has observed, pursuit of a breach of warranty case, without more, does not support enhancement of the lodestar:

> The second *Johnson* factor ("the novelty and difficulty of the questions involved") is particularly applicable to this case which has literally blazed a trail through the uncharted territory of allegedly defective computer microcode.  **This was far more than a breach of warranty case.**  Class Counsel pursued a cause of action that had never been asserted on behalf of a class: a claim for injunctive and monetary relief under <u>Title 18 U.S.C. § 1030</u>.  Class Counsel successfully defended their theory against motions for summary judgment generating a flurry of briefing.  In addition, Class Counsel pursued a revocation of acceptance theory on behalf of the class.  **The combination of these theories in a class action against a group of multi-billion dollar, multi-national defendants was completely novel.  Indeed, Professors Arthur Miller, John Coffee, Geoffrey Miller, and Samuel Issachroff all agreed that this was a novel lawsuit—the first of its kind and the first significant class action settlement involving a high-tech company.  Suffice it to say this was a case of first impression.**

*Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 970 (E.D. Tex. 2000) (emphasis added). The *Shaw* "class contains hundreds of thousands or possibly even millions of persons who collectively own five million (5,000,000) Toshiba laptop computers and who reside throughout the United States."  *Id.* at 954.  Moreover, "the headquarters for the ultimate parent corporations of all the Defendants [in *Shaw*] were located in Tokyo, Japan.  As the workday ends in Beaumont it's just beginning in Tokyo.  Consequently, work on this case could and did continue around the

clock." *Id*. at 969.  The class action lawyers in *Shaw* also reviewed over 2,000,000 pages of documents, many of which had to be translated from Japanese to English.  *See Id*.

By comparison, the issues in this case are not so novel, and do not warrant enhancement of the lodestar.

Further, the Fifth Circuit held in *Shipes v. Trinity Indus.* that:

> The district court [awarding attorneys' fees] must be careful, however, not to double count a *Johnson* factor already considered in calculating the lodestar when it determines the necessary adjustments ... Four of the *Johnson* factors—the novelty and complexity of the issues, the special skill and experience of counsel, the quality of the representation, and the results obtained from the litigation—are presumably fully reflected in the lodestar amount. Although upward adjustments of the lodestar figure based on these factors are still permissible, **such modifications are proper only in certain rare and exceptional cases supported by both specific evidence on the record and detailed findings** . . .
>
> Even though Shipes's counsel presented extensive statistical data with competence, nothing less should be expected of counsel; consequently, this factor alone does not support enhancement.

987 F.2d 311, 320-321 (5th Cir. 1993) (emphasis added).

Likewise, as the Supreme Court has explained, the nature of a contingent-fee arrangement is already accounted for in the lodestar calculation and the general considerations an attorney makes before taking *any* case:

> [A]n enhancement for contingency would likely duplicate in substantial part factors already subsumed in the lodestar.  The risk of loss in a particular case (and, therefore, the attorney's contingent risk) is the product of two factors: (1) the legal and factual merits of the claim, and (2) the difficulty of establishing those merits. The second factor, however, is ordinarily reflected in the lodestar— either in the higher number of hours expended to overcome the difficulty, or in the higher hourly rate of the attorney skilled and experienced enough to do so.  *Blum, supra,* at 898–899, 104 S.Ct., at 1548–1549. Taking account of it again through lodestar enhancement amounts to double counting.

> The first factor (relative merits of the claim) is not reflected in the lodestar, but there are good reasons why it should play no part in the calculation of the award. It is, of course, a factor that *always* exists (no claim has a 100% chance of success), so that computation of the lodestar would never end the court's inquiry in contingent-fee cases . . .
>
> An attorney operating on a contingency-fee basis pools the risks presented by his various cases: cases that turn out to be successful pay for the time he gambled on those that did not. To award a contingency enhancement under a fee-shifting statute would in effect pay for the attorney's time (or anticipated time) in cases where his client does *not* prevail.

*City of Burlington v. Dague*, 505 U.S. 557, 562-63, 565 (1992) (citations omitted). Even cases cited by Plaintiffs in support of their argument for enhancement based on the contingent nature of this case acknowledge this reality. *See e.g.*, *Graves v. Barnes*, 700 F.2d 220, 224 (5th Cir. 1983) ("We wish to emphasize that a district court should not award a contingency multiplier in every case. Under appropriate circumstances, attorneys may be adequately compensated through the reasonable calculation of the lodestar.").

Thus, as the Fifth Circuit and Supreme Court have repeatedly recognized, Plaintiffs' attorneys do not deserve to be compensated more than once simply for doing their job.

**B. Time limitations; nature and length of professional relationship with client.**

None of these factors supports enhancement of a lodestar fee. There were no unique time constraints or factors to consider. In fact, the case sat dormant for several months after Plaintiffs filed it on January 1, 2017, and Defendant filed its answer in late May, 2017. None of the class representatives gave depositions. In fact, no depositions took place after the Texas Class representatives joined the lawsuit in January of 2018. There presumably was no professional relationship with any class member other than the class representatives. The class representatives did not appear at any hearing; and did not participate in any discovery other than answering interrogatories and requests for production.

### C.  Amount involved and results obtained.

"As the United States Supreme Court has consistently maintained, as the Fifth Circuit has repeatedly held, and as this Court has previously written, the most critical factor in determining the reasonableness of a fee award is the degree of success obtained."  *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 971 (E.D. Tex. 2000) (internal quotations omitted).

Further, the Fifth Circuit does not hesitate to reduce the lodestar where the benefit to the class, or lack thereof, warrants a reduction:

> In accordance with the parties' amended Agreement, the court then reviewed the information submitted by the parties regarding the actual distribution of class benefits and found that the value of the credit requests submitted by class members in all four states totaled $1,718,594, an amount drastically less than the $64 million that plaintiffs' counsel claimed it had obtained for the class.  **The [trial] court concluded not only that a multiplier was inappropriate, but, "if anything, the fees should be reduced in light of the insignificant benefit to the class members."**

*Strong v. BellSouth Telecommunications, Inc.*, 137 F.3d 844, 851 (5th Cir. 1998) (noting that the district court did not abuse its discretion in denying the requested attorneys' fees) (emphasis added) (citation omitted); *see also Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1048 (5th Cir. 1998) ("The attorney's fee award was over six and one-half times the amount of damages awarded.  *Migis* sought over twenty-six times the damages actually awarded.  Regardless of the effort and ability of her lawyers, we conclude that these ratios are simply too large to allow the fee award to stand.); *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir. 1995) ("Attorneys' fees awards should not provide a windfall to plaintiffs.").

Likewise, the Supreme Court has confirmed simply multiplying hours times a reasonably rate may even be excessive in some instances:

> If, on the other hand, a plaintiff has achieved only **partial or limited success**, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive

> amount . . . Again, the most critical factor is the **degree of success obtained**. (emphasis added)

*Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).  In fact, "[a] reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Id.* at 440.

The Fifth Circuit recently upheld a reduction of more than 80 percent of Plaintiffs' lodestar request, emphasizing that the most critical factor in determining an attorney's fee award is the degree of success obtained.  *Gurule v. Land Guardian, Inc.*, 912 F.3d 252 (5th Cir. 2018).[29]

Here, the two settlements were fair and adequate but did not provide most of the relief sought in Plaintiffs' Complaints.  Most of counsel's clients got no relief at all:  all owners of tank models #3404, #3408, #3425, and #3436, made in any year; all owners of tank models #3412 and #3464 made from 2004-2007 and 2012; and all owners of tank models #3412 and #3464 made from 2007-2010 at Porcelana's Monterrey manufacturing plant.  All class members gave up their claims for treble and/or punitive damages, and were not refunded the purchase price of their tanks. Instead, the 2011 Settlement Class is receiving relatively small monetary amounts (projected to be less than $500,000 total), and the Texas Class settlement provides even smaller amounts of monetary awards.[30]

*Hensley* requires that a fee award must be reduced by the number of hours spent on unsuccessful claims and possibly even adjusted if a plaintiff achieves only limited or partial success.  *Hensley*, 461 U.S. 424 at 434, 436.  This is true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith.  *Id.*  In fact, the *Hensley* Court held the district

---

[29] Gurule's counsel sought a lodestar of $129,565.00. The district court reduced the lodestar because of lack of billing judgment, block billing, and work on dismissed claims, to a lodestar of $62,722.80.  The district court then applied the *Johnson* factors and further reduced the lodestar by 60 percent, to a total fee recovery of $25,089.30. This amounted to an award of less than 20 percent of the fees sought.
[30] [Doc. 266-2, ¶ 15], filed in 4:17-cv-00001.

court did not properly consider the relationship between the extent of success and the amount of the fee award and did not answer the question of what is reasonable in light of that level of success.

In fact, *Combs v. City of Huntington*, 829 F3d 388 (5th Cir. 2016), cited by Plaintiffs in support of their position that "there is no requirement that an attorney fee award be proportional to the amount of damages recovered" reinforces the position of the *Hensley* court that, if anything, a downward adjustment is appropriate here. *See* Plaintiffs' Motion, p. 23. As the court in *Combs* acknowledged:

> We also reject Combs's contention that *Hensley* applies only to cases involving multiple claims and varying levels of success. The Supreme Court has emphasized that the degree of success is the most crucial element in determining a reasonable attorney's fee. *See Hensley*, 461 U.S. at 436, 103 S.Ct. 1933; *accord Marek v. Chesny*, 473 U.S. 1, 11, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985). **"A reduced fee award is appropriate if the** *relief*, **however significant, is limited in comparison to the scope of the litigation as a whole."** *Hensley*, 461 U.S. at 440, 103 S.Ct. 1933 (emphasis added) . . . *Hensley*'s mandate that courts consider the limited nature of a plaintiff's success applies to all cases.
>
> . . . In considering whether to decrease the lodestar, the district court must consider the plaintiff's degree of success. *Hensley*, 461 U.S. at 436–37, 440, 103 S.Ct. 1933.

*Combs*, 829 F3d at 394-95 (noting district court was required to consider the degree of plaintiff's success when considering whether to decrease the lodestar, but that district court abused its discretion in reducing the lodestar amount based on incorrect belief that there was a per se proportionality requirement that required it to reduce the fees award to something less than 6.5 times the actual damages awarded).

Accordingly, Plaintiffs' attorneys' request for a windfall should be denied because the results obtained, particularly when compared to the benefits initially pursued, are limited and constitute a fraction of the attorneys' fees sought.

**D.  Undesirability of action.**

Again, the Fifth Circuit has noted that *Johnson* factors are subsumed within the lodestar amount and should be enhanced only in exceptional circumstances.  *See, e.g., Heidtman v. Cty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999); *Shipes v. Trinity Indus.*, 987 F.2d 311, 321 (5th Cir. 1993).  Plaintiffs' counsel have not produced evidence showing this case was undesirable and worthy of a fee enhancement as a result.  As the Fifth Circuit and Supreme Court have repeatedly recognized, Plaintiffs' attorneys do not deserve a windfall simply for doing their job – using their skills to advocate and obtain results for their clients.

**E.  Similar cases.**

As discussed briefly in Section I above, there are no similar cases awarding a multiplier of nearly 3.0 in a case like this.  Plaintiffs cite to *Klein et al v. O'Neal, Inc*. for the proposition that a multiplier was warranted in that case "due to the risks entailed in [the] lawsuit and the zealous efforts of the attorneys that resulted in a significant recovery for the class."  705 F.Supp.2d 632, 680 (N.D. Tex. 2010).  In fact, the *Klein* Court approved a multiplier of 2.5 after it took seven years to reach a settlement.  Applying the multiplier, attorney's fees were slightly greater than the award of 30% of the common fund.  *Id*. at 681.  The court found that counsels' request for an attorney's fee award equaling **30% of the class recovery** was reasonable.  *Id*.  Thus, the attorneys in *Klein* worked nearly three years longer than Plaintiffs' attorneys here and received a multiplier that is lower than that Plaintiffs' attorneys request, and their fee award was only slightly great than 30% of the common fund.  Plaintiffs' attorneys here request an award that will be more than 22 times the projected class benefits.[31]

---

[31] *See* [Doc. 266-2, ¶ 15], filed in 4:17-cv-00001.  Based on claim data and payments to class members through the mid-point of the settlement class claims period, it is projected that the total 2011 Class awards will likely not exceed $500,000 and the projected Texas Class awards will not exceed $75,000.

Plaintiffs also claim *City of San Antonio, Texas v. Hotels.com, L.P.* supports their requested 2.9% multiplier.  2017 WL 1382553, *15 (W.D. Tex. 2017).  The *City of San Antonio* Court applied a 2.5% multiplier since class counsel represented 172 other plaintiffs in addition to San Antonio.  *Id*.  Yet importantly, the monetary relief in *City of San Antonio* totaled $24,679,619 and attorney fees for that portion were $8.3 million; the declaratory relief totaled $41,135,353 and attorney fees for that portion were $12.3 million.  *Id*.  Again, attorney fees were slightly greater than 30% of the settlement.  They did not greatly exceed the settlement value.  Further, the Fifth Circuit vacated this judgment on the merits; the fee award should accordingly have been vacated.  876 F.3d 717 (5th Cir. 2017).

Plaintiffs cite to *OneBeacon Ins. Co. v. T. Wade Welch & Assoc.* where a multiplier of three was applied to account for the contingent nature and undesirability of the case.  2015 WL 5021954, *13 (S.D. Tex. 2015).  The *OneBeacon* Court held that all of the *Johnson* factors other than whether there was a contingent fee and the case was undesirable were either accounted for in the base lodestar or were irrelevant.  *Id*.  Further, the Court only applied the multiplier to the percentage of fees received by one of the two firms involved.  *Id*.  In discussing application of the *Johnson* factors, the *OneBeacon* Court also cited to *Romaguera v. Gegenheimer*, which held the district court "is required to consider ... whether the plaintiff failed on alternative claims and whether the award is excessive in light of the plaintiff's overall success."  *OneBeacon*, 2015 WL 5021954 at *13, citing 162 F.3d 893, 896 (5th Cir. 1998), *clarified on denial of rehearing*, 169 F.3d 223 (5th Cir. 1999).

Plaintiffs also cite to *In re Dell Inc*., 2010 WL2371834, *15 (W.D. Tex. 2010), *aff'd, appeal dismissed sub nom*, 669 F.3d 632 (5th Cir. 2012).  The *In re Dell* Court applied the percentage method, although it took a hybrid approach and examined the requested fee of 25% of

the recovery in light of the *Johnson* factors since the majority of objections pertained to the amount of attorneys' fees in comparison to the potential recovery of the class members. *Id*. at *13-14. In analyzing the factors, the Court found the time and labor required warranted a **decrease** in attorneys' fees. *Id*. at *15. The Court held that since the legal issues were somewhat difficult but not novel, and because lead counsel was wholly aware of the challenging aspects of the case when taking the case, this factor was **neutral and did not warrant an increase or decrease**. *Id*. at *16. Further, there was no evidence lead counsel was precluded from accepting other matters, so this factor was **neutral**. *Id*. at *17. The Court further found no adjustment was warranted because lead counsel took the case on contingency, since the case was brought against a corporation who could afford to settle and had incentive to do so. *Id*. Based on the collective evaluation of the above (and additional) factors, the Court **decreased** the award. *Id*. at *19.

Plaintiffs also cite to *Vaughn v. American Honda Motor Co*., 627 F.Supp.2d 738, (E.D. Tex. 2007), to support their request for a multiplier. Two class actions alleging odometers overstated mileage in vehicles made between 1999-2006 were consolidated in *Vaughn*. *Id*. at *742-43. The court held a multiplier was warranted since class counsel invested nearly 5 years on behalf of a 6 million member class. *Id*. at *750. Of note, the settlement value to the class was approximately $244 million. *Id*. at *746. Fees awarded were $9,500,000.00, which is 3.9% of the value of the settlement. *Id*. at *751. Here, the litigation was shorter, the class sizes are much smaller, and the value to the classes is markedly less. Nor is there a widespread problem with multiple products spanning seven years. The Texas class spans the most time, and less than a handful of claims were submitted in the first month of the claim period.[32]

---

[32] Exhibit A.

Plaintiffs likewise cite to *Forbush v. J.C. Penney Co*., 98 F.3d 817 (5th Cir. 1996) to support their multiplier request.  However, in this case, the attorney fees requested were 10 percent of the common settlement fund.  *Id*. at 819.  Further, the court applied a lower multiplier than requested for local counsel's portion of fees, holding that at the proposed rate, his customary hourly fee would mushroom from $275 to either $1,265 or $2,225 per hour which would be "outrageous."  *Id*. at 821.  Again, fees are not a percentage of the common settlement fund here.  Further, Plaintiffs' counsel's proposed fee would mushroom their hourly rate from the already staggering $675 to $695 per hour to $1,783.80 per hour, which is outrageous.

The other cases Plaintiffs cite are likewise dissimilar.  *See In re Enron Corp. Securities, Derivative & "ERISA" Litig.*, 586 F.Supp.2d 732, 740, 741, 778, 796 (S.D. Tex. 2008) (Case dissimilar because: (1) it was a securities class action, where higher fees are typically awarded; (2) attorney fees were paid from a common fund; (3) the total recovery was $7.2 billion; (4) counsel requested a fee of 9.52% of the total recovery, which the court awarded, applying the *Johnson* factors as a cross-check); *Di Giacomo v. Plains All American Pipeline*, 2001 WL 34633373, *4, 9, 13 (S.D. Tex. 2001) (Case dissimilar because: (1) it was a securities class action, where higher fees are typically awarded; (2) attorney fees were paid from a common fund; (3) the court awarded fees based on 30% percent of the recovery and applied the *Johnson* factors as a cross-check; $29.5 million settlement and fees of $8,850,000.00 were awarded); *Garza v. Sporting Goods Properties, Inc*., 1996 WL 56247, *17, 24, 26, 29, 32-34 (W.D. Tex. 1996) (Case dissimilar because: (1) it was a common fund case where fees were awarded from the fund; (2) settlement included a fund of $31.5 million in addition to a change in steel in shotguns and warnings (Plaintiffs valued the settlement at $350 million); (3) Court awarded an attorney fee award of $12.5 million, which is significantly lower than both the settlement value and even the settlement fund; (4) although the

court applied a multiplier after it first reduced the total number of hours by amounts spent in preparing the fee application and for vague entries, the court placed emphasis on the exceptional results obtained, as the manufacturer agreed to change the steel in a product which had been manufactured for 35 years).

An enhancement of the lodestar base is not warranted, and in fact, the lodestar should be reduced.

### III.    The lodestar base should be reduced.

As set forth in Section I, Plaintiffs had limited success given the number of putative class members' claims they pursued and the amount of time and effort they spent trying to develop those claims.  The successful class members' claims were largely those **for which Porcelana already had a replacement program in place**.  The projected value for the 2011 class is less than $500,000 and for the Texas class is at most $75,000.[33]  This is limited success in light of the many putative class members' products and claims Plaintiffs sought to have certified.

There is significant precedent for adjusting the lodestar downward:  "After calculating the lodestar, the Court then considers whether the circumstances of the particular case warrant an upward or <u>downward</u> lodestar adjustment."  *See Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*, 2018 WL 1602460 at *2 (E.D. Tex. Apr. 3, 2018) (citing *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998)) (emphasis added); *see also Union Asset Management Holding, A.G. v. Dell*, 669 F3d 632, 644-45 (5th Cir. 2012) (noting that a district court did not abuse its discretion in "adjust[ing] the requested award downward to 18% [of the settlement fund], the lower end of the range in the retainer, reasoning that 18% compensated counsel while protecting the class's interests and accounting for the *Johnson* factors.").

---

[33] [Doc. 266-2, ¶ 15], filed in 4:17-cv-00001.

This Court has historically not hesitated to adjust the lodestar downward when appropriate. *See Neal Techs., Inc. v. Unique Motorsports, Inc.*, No. 4:15-CV-00385, 2018 WL 3630128, at *7-*8 (E.D. Tex. July 31, 2018) (approving 20% reduction of fees); *Feld Motor Sports, Inc. v. Traxxas, LP*, No. 4:14-CV-543, 2016 WL 2758183, at *15-*16 (E.D. Tex. May 12, 2016) (reducing time billed for travel and non-legal work); *Recursion Software, Inc. v. Double-Take Software, Inc.*, No. 4:10-CV-403, 2013 WL 12403528, at *7 (E.D. Tex. Jan. 3, 2013) ("Therefore, the Court finds that a 30-percent reduction in the fees of these attorneys is appropriate to prevent excessive or duplicative billing.  Therefore, the Court finds the fees of K. Wilton, D. Waddell, M. Blair, and V. Smolcynski should be reduced by 30 percent, or $213,097.95, bringing the total fee, the Court's lodestar amount, to $545,759.45."); *Pittman v. McClain's R.V., Inc.*, No. 4:12CV542, 2013 WL 6804658, at *4 (E.D. Tex. Dec. 23, 2013) ("The Court cannot point to a single entry in the time records that is unrelated to Plaintiffs' advancement of the FLSA claims. Although it is safe to say that some of the time expended was related to the retaliation claim, Plaintiffs only succeeded on a very small part of their FLSA claims.  The Court agrees that a reduction is necessary . . . Therefore, the Court recommends reduction of the requested fee by 25 percent, which is a reduction of $10,792.25.").  In fact, last year, this Court adjusted the lodestar downward when it "awarded attorneys' fees in the amount of $2,750,000" where the "[t]he Settlement [] created a fund of $11,000,000" and plaintiffs' counsel reportedly "devoted over 6,196 hours, with a lodestar value of approximately $3,321,021.00 to achieve the Settlement." *Allen Hall, et al. v. Rent-A-Center, Inc., et al.,* 4:16-cv-00978-ALM-CMC (E.D. Tex. 2019) (Mazzant, J.), Order Awarding Attorneys' Fees and Payment of Expenses (Doc. 127).

## IV.   Conclusion

For these reasons, Defendant Porcelana Corona de Mexico, S.A. de C.V. f/k/a Sanitarios Lamosa S.A. de C.V. a/k/a Vortens™ respectfully requests this Court reject Plaintiffs' fee

application and apply the methodology and calculations described herein to compensate Plaintiffs'

counsel for the work and expenses reasonably incurred for the benefit of the settlement classes.

Respectfully submitted,

*/s/ Melissa Dorman Matthews*
**DARRELL L. BARGER**
State Bar No. 01733800
dbarger@hartlinebarger.com
**HARTLINE BARGER LLP**
800 N. Shoreline Blvd., Suite 2000, North Tower
Corpus Christi, Texas 78401
(361) 866-8000
(361) 866-8039 fax

**MELISSA DORMAN MATTHEWS**
State Bar No. 00790603
mmatthews@hartlinebarger.com
**ANGELA S. GORDON**
State Bar No. 24027333
agordon@hartlinebarger.com
**L. ABIGAIL FOREMAN**
State Bar No. 24056371
aforeman@hartlinebarger.com

**HARTLINE BARGER LLP**
8750 N. Central Expressway, Suite 1600
Dallas, TX 75231
(214) 369-2100
(214) 267-4271 (direct facsimile)

**ATTORNEYS FOR DEFENDANT PORCELANA CORONA DE MEXICO, S.A. DE C.V. F/K/A SANITARIOS LAMOSA S.A. DE C.V. A/K/A VORTENS**

<u>**CERTIFICATE OF SERVICE**</u>

On March 19, 2020, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Melissa Dorman Matthews*
**MELISSA DORMAN MATTHEWS**